Carol L. Cone & another[1] *vs.* Arlene M. Ellis & another.[2]

No. 01-P-1167.

Barnstable. June 10, 2003. - October 27, 2003.

Present: Cowin, Mills, & Green, JJ.

*Real Property,* Purchase and sale agreement. *Contract,* Sale of real estate, Misrepresentation, Merger.

In an action for intentional misrepresentation by the sellers of a house with respect to the condition of the dwelling, the judge properly granted the sellers' motion for summary judgment in reliance on exculpatory and merger clauses in the purchase and sale agreement where, while negotiations were rapid, the buyers were represented by an attorney who reserved the right to consult further with the buyers before finalizing the agreement, and where a clause stating that the buyers relied completely on a home inspection was customized to the contract, which, along with the merger clause, were reviewed by the buyers' attorney and survived his revisions and additions constituting part of the signed contract. [750-752]

Civil action commenced in the Superior Court Department on December 24, 1999.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a motion for summary judgment, and entry of a separate and final judgment was ordered by *Gary A. Nickerson,* J.

*Bernardo J. Cabral* for the plaintiffs.

*Jonathan D. Fitch* for the defendants.

Mills, J. In count IV of their complaint, the plaintiff buyers claimed intentional misrepresentation by the defendant sellers with respect to the condition of a dwelling. A Superior Court judge granted the defendant sellers' motion for summary judg-

---

[1]Harry L. Silverman, trustee of C & H Lot 1 Nominee Trust.

[2]Thomas C. Ellis.

ment in reliance on exculpatory and merger clauses in the purchase and sale agreement.[3] We affirm.

*Background.*[4] The buyers contracted with a home inspector to perform a home inspection of the sellers' property. During that inspection, the home inspector discovered wood boring insects in the second-floor bathroom. One of the sellers, Arlene, stated, in the presence of the home inspector and the buyers, that the insect infestation was limited to that bathroom, despite her knowledge that other areas of the home were also infested. Thereafter, the buyers' attorney hand-marked comments to a draft purchase and sales agreement and proposed a rider. On March 10, 1997, the parties executed a modified purchase and sales agreement that included both "boilerplate" clauses and clauses specific, as follows:

"25. WARRANTIES AND REPRESENTATIONS

"The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by the SELLER or the Broker(s): None. See paragraph 30.

"27. [Illegible[5]]

. . .

---

[3]A home inspector, Griggs & Browne Home Inspection Services, was also named as a defendant in the original complaint. The counts against the home inspector are still pending in the Superior Court. Following the allowance of the sellers' motion for summary judgment, a separate and final judgment under Mass.R.Civ.P. 54(b), 365 Mass. 820 (1965), was entered, and the plaintiff buyers appealed. The home inspector is not a party to this appeal.

[4]"We have been mindful throughout of the standard to be applied upon a motion for summary judgment made against the party who bears the burden of proof (here the plaintiffs). The materials tendered on the motion should indicate that proof supporting the given issue is not likely to be forthcoming at trial; the party with the burden must then produce evidence demonstrating that there is a genuine issue for trial." *Greenery Rehabilitation Group, Inc.* v. *Antaramian,* 36 Mass. App. Ct. 73, 75 n.4 (1994).

[5]See note 6, *infra.*

"to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER.

"30. ADDITIONAL PROVISIONS

"See Rider A attached hereto.

"A. By execution hereof, Buyer acknowledges that she has completed all structural and pest contingency inspections as specifically reserved in her offer to purchase and is satisfied with the results thereof and has relied completely thereon. The only exception to Buyer's satisfaction with the premises are the following:

"1. Active wood boring insects were located in the two bathrooms on the second floor and the exposed wood beams in these rooms must be treated with Bora Care (2 coats) by Seller at Seller's expense prior to closing."[6]

*Discussion.* The buyers allege error in the judge's conclusion, as matter of law, that the exculpatory and merger clauses precluded the buyers' claim to have relied upon sellers' representations, whether or not intentionally false. This case calls on us to adjudicate misrepresentations disavowed by contractual clauses. "As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud." *Bates* v. *Southgate,* 308 Mass. 170, 182 (1941). We proceed while aware that "[i]n the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representa-

---

[6]Irrelevant exceptions are omitted, including those appearing in Rider A. Letters cut off by the reproduction in the record have been re-inserted to the best of our ability. We note that the buyers' appendix, while including the purchase and sale agreement at three places, fails to contain a complete text of paragraph 27, which the parties argue as constituting a standard merger clause. We act upon that understanding.

tions which in fact have been made and in fact are false but for which he would not have made the agreement." *Ibid.*

Thus, in *Bates* v. *Southgate, supra* at 170-172, the plaintiff claimed that he was induced to purchase company stock by the defendant broker's false claim that the company had recently received a profitable order. The Supreme Judicial Court refused to preclude a suit for intentional misrepresentation when the defense was based on a boilerplate exculpatory clause contained in the broker's confirmation slip. See *id.* at 184. Similarly, in *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 708-714 (1990), the Supreme Judicial Court allowed the plaintiff's action alleging premature termination of an agreement, despite an early termination clause, where the clause had been agreed upon two months after performance under the contract had begun, the parties had initially discussed "a long-term arrangement," and the defendant had assured the plaintiff that the clause was "inoperative" and "meaningless."

However, the Supreme Judicial Court has also observed "how easily and insensibly words of hope or expectation are converted by an interested memory into statements of quality and value when the expectation has been disappointed." *Deming* v. *Darling*, 148 Mass. 504, 506 (1889). "[M]uch of what is said during the negotiation of a business agreement never becomes part of the final bargain. Only what matters is reduced to writing and signed." *McCartin* v. *Westlake*, 36 Mass. App. Ct. 221, 232 (1994). Thus, we have held that "regardless of how the [prior] statements are viewed, any claim based on them is eliminated by the terms of the purchase agreement . . . [where] the question of the possible survival . . . of any antecedent representations or warranties was itself negotiated seriously and at length . . . . [P]rovisions . . . [that are] not 'boilerplate' but . . . [are] negotiated and agreed to . . . are to be respected and enforced according to their terms." *Greenery Rehabilitation Group, Inc.* v. *Antaramian*, 36 Mass. App. Ct. 73, 75-76 (1994). See *Davidson* v. *General Motors Corp.*, 57 Mass. App. Ct. 637, 643 (2003).

In determining whether an exculpatory clause is the result of a "deliberate, uncoerced, and businesslike process [that] . . . cannot be undone," we have looked at the length of negotia-

tions; whether the plaintiffs were represented by counsel; who proposed changes that became part of the final agreement; and whether the subject of the purported misrepresentation was specifically addressed in the contract. See *McCartin* v. *Westlake*, 36 Mass. App. Ct. at 231.

We agree with the judge that the misrepresentation claim in this case was precluded by the merger and exculpatory clauses. While negotiations appear to have been rapid, the buyers were represented by an attorney who reserved the right to consult further with the buyers before finalizing the agreement. The clause stating that the buyers relied completely on the home inspector was customized to this contract. Both it and the merger clause were reviewed by the buyers' attorney and survived his revisions and additions constituting part of the signed contract. These actions constitute the type of deliberate, uncoerced, and businesslike negotiations to whose product we give effect.

We distinguish this case from those where the Supreme Judicial Court has refused to give exculpatory clauses effect. Unlike *Bates* v. *Southgate, supra,* this case does not involve only boilerplate language appearing on a mere confirmation slip. And, unlike *McEvoy Travel Bureau, Inc.* v. *Norton Co., supra,* this contract preceded performance and was never disclaimed by the sellers.

Summary judgment for the defendants on count IV of the complaint is affirmed.

*So ordered.*