MacLeod, Bonnie H., J.
These actions arise from the plaintiff, Susan Foley Larson’s purchase of real estate in Concord, Massachusetts. The first action, No. 03-01410, is against the seller’s brokers, defendants, Landvest, Inc. (“Landvest”), Wade Staniar, and Terrance Maitland, for misrepresentations that they allegedly made in connection with the sale. In that action, Landvest brought a third-party complaint seeking contribution and indemnification from Mark L. Scheier, the attorney who counseled the plaintiff in her purchase of the Property. The plaintiff brought a second action, No. 04-03450, against Scheier, his law firm, Scheier & Katin, and Cabco Consult, alleging their negligence in connection with her purchase of the Property. There are four motions before this court: (1) the plaintiffs motion to consolidate both actions;[3] (2) defendants Landvest, Staniar, and Maitland’s motion for summaiy judgment on the claims in Larson’s amended complaint;[4] (3) third-party defendant Scheier’s motion for summaiy judgment on the claims in Landvest’s third-party complaint;[5] and (4) the plaintiffs motion pursuant to Mass.R.Civ.P. 56(f) to stay consideration of all summaiy judgment motions pending additional discoveiy.[6] For the following rea *480 sons, the plaintiffs motion to consolidate is Allowed, the plaintiffs motion pursuant to Mass.R.Civ.P. 56(f) is Denied, defendants Landvest, Wade Staniar, and Terrance Maitland’s motion for summary judgment is Denied, and Third-Party Defendant Scheier’s motion for summary judgment is Allowed, only as to Count I (Indemnification) of defendant Landvest’s third-party complaint.

FACTUAL BACKGROUND

In June of 2001, Larson purchased a Property in Concord, Massachusetts. According to Larson, she purchased the Property in reliance upon alleged oral representations made by the sellers’ brokers, defendants Landvest, Maitland, and Staniar, when she toured the Property with them prior to purchasing it. Larson alleges that Landvest, Maitland, and Staniar, the sellers’ brokers, made a number of misrepresentations regarding the property line and the potential for renovation. The parties completely dispute the substance of those conversations, and of the alleged misrepresentations. Larson maintains that the sellers’ brokers unequivocally told her, while walking the gardens of the Property, that the lot size was represented by cedar fence on the lot, that the mowed path to the Sudbury river was a deeded easement, and that she could expand the property upward and outward, as a matter of right, without approval or waivers from any town board. The sellers’ brokers deny making these statements. They argue that any discussions regarding the lot size, renovations, and the mowed path were qualified by statements indicating that the information was based on surveys garnered from other professionals and entities. Additionally, they argue that the surveys from which this information came were provided to Larson, and remained on display inside the Property during each of her visits.
Attorney Scheier advised Larson in connection with the purchase, and worked on drafts of the purchase and sale agreement (the “P&S Agreement”) with the sellers’ counsel. On October 1, 2001, the closing for the property took place and Larson signed the P&S Agreement which contained the following clauses:
No. 13 ACCEPTANCE OF DEED. The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.
No. 23 THE BROKER AS PARTY. The Broker(s) named herein join(s) in this agreement and becomes (s) a party hereto. Insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.
No. 25 WARRANTIES AND REPRESENTATIONS. The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE.
No. 27 CONSTRUCTION OF AGREEMENT. This instrument ... sets forth the entire contract between the parties, is binding upon, and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors, and assigns, and may be cancelled, modified, or amended only by a written instrument executed by both the SELLER and BUYER . . .
The P&S Agreement is a standard Greater Boston Real Estate Board purchase and sale agreement, and contains only two terms added by the parties. The first is a condition written into the P&S Agreement by the parties into Section 30, which states that the seller would replace defective glass on the lower level of the home. Additional conditions were incorporated via Ryder A, which states, in relevant part, the following language:
NO WARRANTIES AND REPRESENTATIONS. Warranties and Representations. The Buyer acknowledges that the Buyer has been given full and ample opportunity to inspect the Premises, and that except as otherwise provided herein, the premises are being sold in “as-is” condition;. .. that the Seller is acting in a fiduciary capacity and has made no statements and no warranties or representations, express or implied, regarding the Premises on which the Buyer has relied in connection with the Buyer’s decision to purchase the Premises; and it is the understanding of the parties that the entire agreement of the parties with respect to the transaction which is the subject of this Agreement is fully and completely set forth in this Agreement. The Buyer’s agreements in this paragraph shall survive deliveiy of the deed.
Several months after she purchased the property, in March of 2002, Larson discovered that the cedar fence on the exterior grounds of the property did not represent the western lot line, and that there was no deeded easement to the Sudbury river. Larson also discovered that she could not renovate the property as planned, without seeking approval from several town boards, because of zoning set-back nonconformities, and conservation and wetlands restrictions. According to Larson, she never would have bought the Property, or paid the price that she did, if she was aware of the misrepresentations.
Larson has brought two separate actions seeking compensation for the harm she alleges she has suffered in connection with her purchase of the Property. The first action, No. 03-01410, is against the sellers’ brokers, defendants Landvest, Maitland, and Stainar. In her complaint, Larson alleges that the defendants made fraudulent misrepresentations (Count I), negli *481 gent misrepresentations (Count II), and that their conduct constitutes a violation of G.L.c. 93A, §2 (Count III). Shortly after Larson filed her complaint, defendant Landvest brought a third-party complaint against Larson’s counsel, attorney Scheier. In its third-party complaint, Landvest alleges attorney Scheier’s negligence in counseling Larson in connection with her purchase of the Property, and seeks indemnity (Count I) and contribution (Count II) from Scheier.
Larson also filed a second action, No. 04-03450, against attorney Scheier, his law firm Scheier & Katin, and Cabco Consult. In the complaint for that action, Larson claims that attorney Scheier, while acting as her counsel, and in his capacity as an agent of the firm Scheier & Katin, breached his duty of care to her by failing to order a wetlands protection study of the Property, and failing to recognize the nonconformities of its plot. Larson also alleges that Cabco Consult, a company that measured and assessed the Property, was negligent in reporting to her and Scheier that there were no encroachments, pre-existing zoning violations, or non-conformities in the plot.
The parties have brought several motions before this court. There are two motions for summary judgment at issue here, both arising from the No.03-01410 action: defendants Landvest, Inc., Staniar, and Maitland’s motion for summary judgment on all of Larson’s claims in her amended complaint, and third-party defendant Scheier’s motion for summary judgment on the claims that Landvest brings against him in the third-party complaint. Larson argues, in her affidavit pursuant to Mass.R.Civ.P. 56(f), that summary judgment should not be granted because she has not completed discovery. Larson is also moving to consolidate both actions.

DISCUSSION

I.The Plaintiffs Motion to Consolidate

Larson is moving to consolidate two civil actions, No. 03-01410, and No. 04-03450, currently pending before this court pursuant to Mass.R.Civ.P. 42. Rule 42(a) provides that, “(W]hen actions involving a common question of law or fact are pending before the court... it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated.” Here, actions No. 03-01410 and No. 04-03450, involve the same facts, the same Property, the same plaintiff, and a group of defendants who performed functions on different sides of the same transaction that culminated with Larson’s purchase of the Property. The consolidation of these two cases permits an analysis by the jury of the several distinct and allegedly negligent acts that Larson alleges occurred in her purchase of the Property, and affords them a rational basis for determining the potential contribution of each to the single alleged harm that forms the substance of Larson’s complaint. Both actions share common questions of fact and law, and therefore, I find that the interests of judicial economy will be served by consolidating them. For these reasons, the plaintiffs motion to consolidate is allowed.

II.The Plaintiffs Motion Pursuant to Mass.R.Civ.P. 56F

Larson argues that summary judgment would not be warranted on either claim until she can obtain additional discovery, mainly the deposition of attorney Scheier. See Mass.R.Civ.P. 56(f). However, Larson is not an adverse party to attorney Scheier under Mass.R.Civ.P. 14, and is not a party entitled to oppose his motion for summary judgment. She cannot, therefore, avail herself of Rule 56(f), which allows the court to stay the consideration of a summary judgment motion only upon a showing by the “party opposing the [summary judgment] motion” that additional discovery is needed. Even so, the additional discovery that Larson seeks, mainly regarding whether Scheier’s conduct fell below the standard of care for an attorney in counseling her in connection with the sale, would be fruitless to the claims at issue in Scheier’s summary judgment motion which addresses only the claims in Landvest’s third-party complaint, and not the malpractice claims that form the substance of Larson’s complaint. Therefore, Larson’s motion pursuant to Rule 56(f) is denied.

III.Defendants Landvest, Staniar, and Maitland's Motion for Summary Judgment

Defendants Landvest, Staniar, and Maitland are moving for summary judgment on the fraud, negligent misrepresentation, and G.L.c. 93A, claims that Larson brings in her amended complaint in Action No. 03-01410. They argue that the P&S Agreement, particularly its exculpatory and merger clauses, preclude the plaintiffs claims alleging her reliance on any alleged oral representations made by Landvest, Staniar, and Maitland, and that the G.L.c. 93A claims premised on these common-law violations must, therefore, also necessarily fail. I disagree.
Defendants Landvest, Staniar, and Maitland maintain that, if there were any false representations, they are of no consequence since Larson acknowledged in Sections 23, 25, and 27, of the P&S Agreement that she was not relying on any representations not set forth in that Agreement or previously made in writing. This argument fails on two grounds. Under Massachusetts law, this clause is not an automatic defense to an allegation of misrepresentation. Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188,193 (1987) (“[I]n the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement”); see Bates v. Southgate, 308 Mass. 170, 182 (1941).
*482 Second, where fraud and deceit are involved, general contractual disclaimers and exculpatory clauses, like the ones at issue here, have not automatically prevented a plaintiff from litigating his reasonable reliance on the fraudulent misrepresentations in question. See Sheehy, 24 Mass.App.Ct. at 193-94; see e.g. Bates, 308 Mass, at 182. The public policy considerations upon which Bates was decided were revisited by the Appeals Court in Sound Techniques. Inc. v. Hoffman, 50 Mass.App.Ct. 425 (2000). The Sound Techniques court reiterated that the “established” public “policy of this Commonwealth [is] to refuse to enforce a merger clause for purposes of protecting a party from liability on account of his fraud and deceit.” Id. at 430. This rule balances the advantages of certainty in contractual relations with the harm that results from fraud. Bates, 308 Mass, at 182-83.
Defendants Landvest, Staniar, and Maitland rely on Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass.App.Ct. 73 (1994), and Cone v. Ellis, 59 Mass.App.Ct. 748 (2003), for the position that the merger and exculpatory clauses in the P&S agreement are an absolute bar to Larson’s claims, regardless of the misrepresentations she alleges. Those cases, however, present very different circumstances than the ones at issue here. The Greenery court held that the “Warranties and Representations” and “Acceptance of Deed” clauses in the parties’ agreement barred the plaintiffs misrepresentation claim because the clauses in question were not “boilerplate,” but were instead specific compromises achieved after lengthy negotiations between the parties on the particular issue of the survival of antecedent representations. Id. at 76-77. The Cone court also held that abuyer’s claim of intentional misrepresentation by a defendant seller was barred by the exculpatory and merger clauses because the subject of the alleged misrepresentation was customized into the purchase and sale agreement, and was negotiated beyond the standard boilerplate of the contract. Id. at 751-53; see also Coughlin v. Gascombe, 2000 Mass.App.Div 321. That is not the case here. There is no evidence in the summary judgment record that Section 25, or any other merger and exculpatory provisions of the P&S Agreement, a standard form with the exception of Ryder A, was ever discussed, negotiated, or compromised, beyond what the boilerplate provides.
In this case, the court is confronted with Larson’s claim that the integrity of the bargaining process was tainted by fraud, a claim over which there are genuine issues of material fact in dispute. That fraud claim, if proven at trial, may provide a reasonable basis for ignoring the plain language of the exculpatory contractual disclaimers in the P&S Agreement. See Sheehy, 24 Mass.App.Ct. at 193-94; Sound Techniques, 50 Mass.App.Ct. at 434 (exculpatory clauses in purchase and sale agreements are enforceable to the extent that they protect against liability for negligent as opposed to intentional misrepresentation); Bates, 308 Mass, at 181-83. For all these reasons, defendants Landvest, Stainar, and Maitland’s motion for summaiyjudgment is denied regarding the common-law claims for fraud, negligent misrepresentations, and the related G.L.c. 93A claim.

IV. Third-Party Defendant Scheier’s Motion for Summary Judgment

In his motion, Scheier argues that the claims of indemnity (Count I) and contribution (Count II) that form the substance of defendant Landvest’s third-party complaint against him fail as a matter of law. Landvest argues that both claims survive summary judgment because Scheier was negligent in counseling Larson, making him the sole or joint tortfeasor, and that it would raise the specter of inconsistent adjudication if Landvest were denied its potential right to recover from Scheier as an indemnitor, or under a theory of contribution, at trial. I disagree.
Landvest has not established that it has a right to seek indemnity from Scheier. The right to indemnity allows a party “who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of the loss, including reasonable attorneys fees.” Santos v. Chrysler Corp., 430 Mass. 198, 217 (1999), citing Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). In order to give rise to a claim for indemnification, a party must establish either, (1) that an express agreement to indemnity exists, (2) a contractual right implied from the nature of the relationship between the parties, or (3) a tort-based right where one party is held derivatively or vicariously liable for the wrongful act of another. See Fall River Housing Auth. v. H.V. Collins Co., 414 Mass. 10, 13 (1992); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983). Landvest relies only on the latter, arguing that it has a right to indemnity at common law from Scheier because it is not at fault for the negligent acts that Larson alleges, and that any liability it incurs is only derivative of Scheier’s wrongful acts. Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass. 366, 370 (1985); see e.g. Decker, 389 Mass. at 40; Slocum v. Donahue, 44 Mass.App.Ct. 937, 939 (1998) (indemnity, at common law, is permitted only when the individual or entity seeking indemnity is not at fault for the negligent act, but is exposed to derivative or vicarious liability for the wrongful act of another).
The principles of derivative and vicarious liability are necessary to sustain a common-law indemnity claim. Vicarious liability applies only where the agent has committed a wrongful act, the liability of the principle arises simply by operation of law, and is thus, only derivative of the wrongful act of the agent. Elias, 410 Mass, at 481; see Karcher v. Burbank, 303 Mass. 303, 305 (1939). It is in this regard that Landvest’s indemnity claim falls short. Landvest’s indemnity claim fails because nothing in the summary *483 judgment record supports the existence of such a relationship between Landvest, the sellers’ broker, and Sche-ier, the buyer’s attorney. The parties do not stand in an agency relationship, nor do they fit any alternative classification, that creates derivative liability. See e.g. Elias, 410 Mass. at 483; Hollywood Barbecue Co., v. Morse, 314 Mass. 368, 369-70 (1943) (derivative liability based on master-servant relationship); Leonard v. Lumbermens Mut Cos. Co., 298 Mass. 393, 395-96 (1937) (derivative liability based on agency relationship); Tenedios v. Wm. Filene’s Sons Co., 20 Mass.App.Ct. 252, 257 (1985) (derivative liability arising from the employer and employee relationship); Dan Dobbs, The Law of Torts §333 (2000) (derivative and vicarious liability exists in situations involving principles and their agents, conspirators, partners, and employers and their employees). Landvest does not point to anything in the summary judgment record on which a derivative relationship would be based between it and Scheier. Without commenting on the merits of the parties’ claims, if Landvest is liable to Larson, it would not be because a relationship is present between it and Scheier that is derivative or vicarious in nature, rather, it would be based on whatever negligence, if any, that the juiy attributes to its conduct. Thus, there is nothing in the summary judgment record before this court that gives rise to a common-law obligation to indemnify. Therefore, Count I (Indemnification) of Landvest’s Third-Party complaint should be dismissed.
The right to common-law contribution, however, is premised on different principles than indemnification. Contribution, pursuant to G.L.c. 23 IB, is allowed between joint tortfeasors who cause another, by reason of their wrongdoing, to incur damage. Elias, 410 Mass, at 482. Contribution is based on shared fault, and thus, the liability of each tortfeasor is direct and divisible because each contributed to the injuiy. Id Scheier argues that the contribution claim must fail, first, because he denies his own liability, and second, because no party may seek contribution on a claim of legal malpractice. I disagree. It is not before this court, on the instant motions, to decide the merits of Larson’s malpractice claim against Scheier, or even whether her claim would fail as a matter of law. See e.g. Fanaras Ent., Inc. v. Roger Allen Doane et al., 423 Mass. 121, 124-25 (1996) (discussing the elements necessary to bring a legal malpractice claim).
Scheier is incorrect that Larson’s malpractice claim, as a matter of law, is a claim that is not subject to the principles of contribution, and which falls outside the scope of G.L.c. 23 IB. Contribution under G.L.c. 23IB is appropriate between parties who are jointly liable in tort for the same injuries, even if they are liable on different theories of liability. Wolfe v. Ford Motor, Inc., 386 Mass. 95, 100 (1982) (“the statutory concern is with joint liability in tort for the same injuiy, not with whether such joint liability is based on the same theory”). In order to fall within the scope of G.L.c. 23IB, the parties need to show that they are both liable in tort. Both parties here are potentially liable in tort, Landvest for the alleged fraud, and Scheier for his alleged legal malpractice. See Clarke v. Rowe, 428 Mass. 339, 342 (1998) (legal malpractice claim may sound in tort or contract); Ryan v. Ryan, 419 Mass. 86, 89 (1994). Scheier suggests that liability for legal malpractice only runs to the client, and a non-client tortfea-sor cannot seek contribution from the attorney. However, there is no authority suggesting that legal malpractice claims premised on negligence are insulated from the rubric of torts for which contribution may be sought pursuant to G.L.c. 23 IB, or that they are exempt from principles of comparative and contributoiy negligence. Cf. Rowe, 428 Mass, at 345, citing Pinkham v. Burgess, 933 F.2d 1066, 1073 (1st. Cir. 1991) (“all of the courts that have considered the issue have held that the defense of contributoiy negligence applies in legal malpractice actions, despite the fiduciary nature of the attorney-client relationship”).
If a jury were to find Scheier and Landvest liable on the tort theories raised by Larson in her complaints, then both parties may be liable in tort to Larson for the same damages she alleges she suffered in connection with the Property. This situation, thus, may then fall within the purview of G.L.c. 23 IB, and potentially afford Landvest a right of contribution against Scheier. Summary judgment is, therefore, inappropriate with regard to the contribution claim in Count II of Landvest’s third-party complaint.
For the foregoing reasons, Scheier’s motion for summary judgment is allowed in part, only as to the indemnification claim in Count I of Landvest’s third-party complaint.

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion to consolidate be ALLOWED, and that the plaintiffs motion pursuant to Mass.R.Civ.P. 56(f) is DENIED. Defendants,’ Landvest, Maitland, and Staniar’s, motion for summary judgment is DENIED. Third-party defendant Scheier’s motion for summary judgment is ALLOWED only as to Count I of defendant Landvest’s third-party complaint, and it is hereby ORDERED that Count I of the defendant Landvest’s third-party complaint be DISMISSED with prejudice.

Che plaintiff brings this motion under the caption of C.A. No. 04-03450.

defendants Landvest, Maitland, and Staniar, filed this motion under the caption of C.A. No. 03-01410.

Chird-party defendant Scheier filed this motion under the caption of C.A. No. 03-01410.

Che plaintiff brings this motion under the caption of C A. No. 04-03450.