BRIAN J. QUINLAN & another[1] *vs.* RICHARD J. CLASBY
& another.[2]

No. 06-P-1500.

Suffolk. November 5, 2007. - January 25, 2008.

Present: PERRETTA, GELINAS, & KANTROWITZ, JJ.

*Broker. Consumer Protection Act,* Unfair or deceptive act.

A Superior Court judge erred in ruling that the defendant real estate broker
was liable for unfair and deceptive acts or practices under G. L. c. 93A,
based on her having advertised a house as a three-family dwelling when, in
actuality and without the broker's knowledge, the home as configured
violated zoning requirements, where there was little, if any, reason for the
broker to suspect that the property was not lawfully a three-family residence,
and where the broker did all that was legally required of a real estate
broker in the sale of the property to the plaintiffs. [102-104]

CIVIL ACTION commenced in the Superior Court Department on
December 3, 2002.

The case was tried before *Elizabeth M. Fahey*, J.

*Michael J. Traft* for O'Kiley Real Estate Agency, Inc.

*Chaz R. Fisher* for the plaintiffs.

*Robert S. Kutner*, for Massachusetts Association of Realtors,
amicus curiae, submitted a brief.

KANTROWITZ, J. Defendant O'Kiley Real Estate Agency, Inc.
(O'Kiley or broker), appeals from a judgment of the Superior
Court finding liability for unfair and deceptive acts or practices
under G. L. c. 93A. Two points are raised on appeal: that a real
estate broker cannot be held liable under G. L. c. 93A for ad-
vertising a house as a three-family dwelling when, in actuality
and without the broker's knowledge, the home as configured

---

[1] Warren T. Quinlan.

[2] O'Kiley Real Estate Agency, Inc.

violates zoning requirements; and that there was error in the calculation of damages.[3] We reverse.

*Facts*. In 1992, the defendant, Richard J. Clasby, purchased a house in the South Boston section of Boston that contained four separate apartments. As the house was in need of repairs, Clasby cleared it of tenants, filed a request for a variance to change the property to a three-family residence in 1993, and obtained the requisite permits for the renovations in 1995. Clasby subsequently discovered a 1974 decision from the zoning board of appeals granting the home a variance to be used as a three-family residence, but providing "that there shall not be more than one (1) apartment above the first floor." Clasby withdrew his request for another variance, believing that he did not need to pursue further action because a three-family dwelling was already a permitted use. The property was renovated as planned, resulting in a three-family home with *two* second-floor apartments. Clasby leased all three units to tenants.[4]

In 1998, Clasby approached O'Kiley to sell the house. Elizabeth Dynan, an agent for O'Kiley, served as the listing broker. Clasby informed Dynan that the property was a "three-family." Dynan and Gayle Kiley, the owner of O'Kiley, inspected the property, noting that the house was being used as a three-family residence. Kiley also obtained copies of tax records through the 1997 tax year that indicated that the property had been taxed as a four-family residence from 1989 until 1997.[5] Without checking the applicable zoning bylaws or the 1974 variance, the broker

---

[3]We acknowledge the amicus brief filed by the Massachusetts Association of Realtors.

[4]A bank appraisal from 1993, obtained by Clasby in connection with refinancing, described the property as formerly a four-family house that had been "legally changed to a three[-]family dwelling." Clasby insured the property as a three-family residence. The record also includes four permits that were filed with the city's inspectional services department in 1995. The first refers to the legal occupancy of the property as a "3 family Res." The second and third only refer to the purpose, use, and occupancy of the building as "Residential." On the fourth document, "three[-]family dwelling" is crossed out and handwritten in the margin is "no record of occupancy."

[5]Kiley testified that she had knowledge that the building was at one point a four-family house, but could not recall when or how she learned the information. She testified that she reviewed the tax documents, but did not testify as to how the tax documents classified the building. A review of the documents shows that at the time of the sale, the house was classified as "R.4." After

advertised the house as a three-family dwelling. The plaintiffs, Brian J. Quinlan and Warren T. Quinlan, purchased the property from Clasby for $221,000 in August of 1998.[6] The house continued to be used as a three-family residence.

In 2001, the plaintiffs decided to sell the property. They received an offer from Kathleen McCarthy for $390,000, and a purchase and sale agreement was executed. After learning that the property, as configured, was not a lawful three-family house,[7] McCarthy decided, as the parties agree was her right under the agreement, not to proceed with the sale.

The plaintiffs then received a second offer in December, 2001, from Cara Bufalino for $350,000. A rider to the purchase and sale agreement required, as a contingency of purchase, that the plaintiffs obtain "a Certificate of Occupancy from the City of Boston stating that the legal occupancy of the Premises is a three family." When the plaintiffs were unable to acquire the required documentation, Bufalino terminated the deal.

The plaintiffs learned that they would have to obtain relief from the zoning board of appeals. Rather than pursue that route, they listed the property as a two-family house and sold it as such to Joseph Middleton on March 25, 2002, for $320,000. The property continued to be assessed as a three-family residence following the sale.

compiling this information, Kiley listed the building as a three-family house.

A history assessment form from the Boston board of assessors indicates that from 1989 through 1999, the property was designated with a land use of "R.4." From 2000 until 2003, the property was classified as "R.3." There is some disagreement between the parties as to the meanings of these classifications. The plaintiffs argue that under the State building code, 780 Code Mass. Regs. § 310.5 (1997), "R.3" refers to "all buildings arranged for occupancy as one- or two-family dwelling units" and that "R.4" refers to "all detached one- or two-family dwellings not more than three stories in height." The broker asserts that the Boston board of assessors defines "R.4" as either an apartment with four to six units or multiple buildings on a single lot, and "R.3" as a three-family dwelling.

[6]At oral argument, we were informed that the plaintiffs did so without benefit of counsel, relying on the bank's attorney. Brian Quinlan, however, testified at trial that at the closing, when the "bank [representative] told me I had to come up with . . . $10,000 [more] to close . . . I ran out and I had to get an attorney at the last second [to resolve the problem]." It is unclear from the record whether the closing was delayed due to this development. Regardless, the additional money was secured.

[7]The record is unclear as to how she learned of this.

The plaintiffs filed the instant lawsuit on December 3, 2002, alleging breach of contract, misrepresentation, and intentional infliction of emotional distress by Clasby,[8] and one count of unfair or deceptive acts or practices in violation of G. L. c. 93A with respect to O'Kiley.

At trial, the plaintiffs produced the testimony of Brian Quinlan; Clasby; Kiley; the first prospective purchaser, McCarthy; and attorney Lynn Deitzer, who represented Bufalino in the second offer to purchase.[9] The defendants called Warren Quinlan; Ellen McLaughlin, executive secretary of the Boston assessing department; and Dynan, the listing broker at O'Kiley who was assigned to assist Clasby in the sale of his property.[10]

Kiley testified that before listing a piece of property, she typically obtains information from the owner, inspects the property, checks the deed and tax information, and considers the selling price of comparable properties. Kiley further testified that she does not check the zoning status of properties she lists. While Kiley indicated that she knows what zoning is, she stated that she "was not familiar with the legal zoning of the properties," and that she "wasn't experienced to tell people . . . what the zoning of a property is." The plaintiffs produced no contrary evidence that brokers typically verify whether a property is in compliance with zoning laws,[11] nor did they produce an expert as to the norm in the industry.

---

[8]Clasby's motion for summary judgment on the claims for misrepresentation and intentional infliction of emotional distress was allowed.

[9]The plaintiffs did not offer expert testimony. Although the broker indicated in a joint pretrial memorandum that Kiley would testify as an expert witness, she was never so qualified. She testified as to her own practices as a real estate broker.

[10]Dynan testified that she was the listing broker for the property and that she conducted a walk-through of the property with Clasby. She reiterated Kiley's testimony that the property appeared to be a functioning three-family residence, with three separate apartments. Dynan stated that she did not check the zoning of the home and that she never does when listing a property because she is not a zoning expert.

[11]The amicus states that "[b]rokers do not generally perform title searches and would not customarily discover whether there may be deed restriction [*sic*] that affects use of a property." Furthermore, the amicus argues that brokers lack the training necessary to give advice regarding compliance with zoning laws: "Real estate brokers and salespersons are not experts in zoning by virtue of their licenses. Salesperson [*sic*] are only required to have 24

On February 17, 2005, the jury returned a verdict for the defendants on the breach of contract and G. L. c. 93A claims.[12] Notwithstanding the jury's view on the c. 93A count, the trial judge, at a subsequent hearing, ruled in favor of the plaintiffs, finding that

> "[Kiley], as a Realtor, as a broker, had an obligation when she marketed the property . . . to be sure that it was what she marketed it as, which was a three-family home. It seems to me that the ordinary, reasonable meaning of the term, 'three-family, unattached dwelling,' which is how she marketed it, is that the property both physically and lawfully contains three units for occupancy. The property did not, and that was something that she should have realized, that the firm, the defendant firm, should have realized."

The trial judge did not, however, find any intentional or wilful misstatement. Rather, the judge concluded that "it was improper and, therefore, unfair for her to market it one way when it was knowable and should have been known by the defendant firm to be another."[13]

On May 9, 2005, judgment entered in favor of Clasby against

---

hours of classroom instruction to obtain a license while brokers are required to have 30 hours. G. L. c. 112, § 87SS. During that week's worth of training, instructors touch upon the following subjects: property rights, land use, condominiums, cooperatives, time shares, subdivision, contracts, deeds, purchase and sale agreements, financing, appraisal of property mortgages, ethics, license laws, fair housing, consumer protection, the closing process, amortization, deeds, property management, insurances, leases, options, commercial brokerage and syndication. In no sense does the average qualified broker become an expert on each of these subjects, much less concerning zoning."

[12]Prior to trial, the judge noted that the jury verdict with respect to the G. L. c. 93A count would be advisory only. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 22 n.31, cert. denied, 522 U.S. 1015 (1997); *Billingham* v. *Dornemann*, 55 Mass. App. Ct. 166, 172 (2002).

[13]At the hearing on the G. L. c. 93A claim, when the broker's counsel raised the issue of what the broker should have done differently, the judge opined that Kiley could "either verify that it is in fact legally and physically a three-family or not list it as a three-family home. She could have listed it as a 12-room home or 10-room home, however many rooms." As the amicus points out, this too is suspect, as what one calls a room may not legally be one.

the plaintiffs,[14] and for the plaintiffs against O'Kiley, awarding damages in the amount of $70,000 with interest, plus attorney's fees and costs of $26,286.50.[15]

*Liability under G. L. c. 93A.* O'Kiley argues, in part, that the judge erred in ruling that listing the property as a "three-family, unattached dwelling" without ascertaining whether the property was lawfully zoned for that use constituted a violation of G. L. c. 93A.[16] We agree.

Generally, liability under G. L. c. 93A is premised on a wilful misstatement of fact. See *Mayer* v. *Cohen-Miles Ins. Agency, Inc.*, 48 Mass. App. Ct. 435, 443 (2000). While the statute requires disclosure of all material facts known to a party at the time of a transaction, it does not impose "liability for failing to disclose what a person does not know." *Underwood* v. *Risman*, 414 Mass. 96, 100 (1993). See *Fernandes* v. *Rodrigue*, 38 Mass. App. Ct. 926, 928 (1995). "The notion of disclosure necessarily implies that the fact in question is known to the person expected to disclose it." *Lawton* v. *Dracousis*, 14 Mass. App. Ct. 164, 170 (1982), quoting from Restatement (Second) of Contracts § 161 comment b (1979). A negligent misrepresentation of fact may, however, constitute an unfair or deceptive act within the meaning of G. L. c. 93A, if the truth could have been reasonably ascertained. *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 235 (1985).

Here, the trial judge explicitly found that there was no intentional or knowing misstatement regarding the lawful use of

---

[14]This is an appeal by O'Kiley, and a cross appeal by the plaintiffs. In a motion for judgment notwithstanding the verdict, the plaintiffs argued that the jury should have found a breach of contract by Clasby. The trial judge denied that motion and entered judgment for Clasby on the breach of contract claim. The plaintiffs filed a notice of appeal on June 10, 2005, and assert in their brief that they "continue to pursue their appeal against Defendant Clasby." Since the plaintiffs make no argument pertaining to Clasby in their brief (and Clasby has neither filed a brief nor appeared before this court), any issue with regard to Clasby is deemed waived.

[15]The judge found that the plaintiffs suffered damages in the amount of $70,000, the difference between the offer initially made by McCarthy of $390,000 and the ultimate sale price of $320,000.

[16]The consumer protection act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," G. L. c. 93A, § 2, and extends a civil right of action to consumers who can show they were injured as a result. G. L. c. 93A, § 9.

the property. Thus, the issue is whether the broker should reasonably have known that the property was not a lawful three-family residence.

The plaintiffs argue that the broker should have checked the zoning of the property and verified its lawful status before marketing the home as a three-family residence. Specifically, they argue that the existence of the 1974 variance, a public record, made the fact of the property's zoning violation reasonably ascertainable.

On these circumstances, we discern no G. L. c. 93A violation. The broker was under no duty, under the facts of this case, to determine if the property was in compliance with the applicable zoning laws. Real estate brokers do not typically review zoning records, and while Kiley indicated that she knows what zoning is, she stated that she does not provide advice concerning the zoning of a particular property. Kiley provided the only testimony on this issue, which the plaintiffs failed to rebut; no evidence was offered as to what real estate brokers are typically expected to do when marketing a home, specifically as to whether zoning records should be examined.

After investigating the property and preparing a listing, there was little, if any, reason for the broker to suspect that the property was not lawfully a three-family residence. Kiley testified that in a typical sale a broker would conduct a personal inspection of the property, examine the deed, tax records, and utility bills, and check comparable sales to arrive at a listing price. After being informed by Clasby that the property was a "three-family," Kiley inspected the property, confirmed that there were in fact three separate apartments, and obtained relevant tax documents.[17] Simply put, the broker did all that was legally required of a real estate broker in the sale of Clasby's property to the plaintiffs. Had the Quinlans hired an attorney when they first purchased the property, the zoning issue presumably would have been identified.

---

[17]The plaintiffs argue that since Kiley knew the building had been taxed and previously configured as a four-family house, she should have suspected there might be a problem and verified the property's legal use. Even if Kiley knew that the property was once a four-family house, and had been switched to a three-family house, she could not from that knowledge be held to reasonably know that the three-family configuration of the property did not conform with zoning requirements.

This court's ruling in *Fernandes* v. *Rodrigue*, 38 Mass. App. Ct. at 928, is instructive. In that case, the sellers told the real estate broker that they believed their parcel contained five acres, when in actuality it contained only 2.8 acres. *Id.* at 926-927. The broker checked town records and found a tax bill and a copy of the deed, both of which indicated the size of the parcel was around four acres; the broker so informed the buyer. *Ibid.* This court rejected the argument that the broker, by "reasonably diligent inquiry," could have known that the property contained significantly less than four acres, noting that "[i]t is hard to think what inquiries about area a real estate broker might have made beyond those that [the defendant] followed up with the town. One would hardly expect the broker to have a survey made." *Id.* at 927-928. See *Lawton* v. *Dracousis*, 14 Mass. App. Ct. at 170 (no c. 93A liability where broker informed buyer that there were no building code violations when, in fact, there were, because broker was not aware of such violations).

In conclusion, the broker here had no obligation in the circumstances presented to verify compliance with zoning laws and, absent knowledge of such a violation, cannot be liable under G. L. c. 93A.[18,19]

*Judgment reversed.*

---

[18]O'Kiley also argues that the listing, describing the property as a three-family residence, cannot be construed as a representation of the property's legal permitted use. Since O'Kiley did not know the property violated the 1974 variance and had no further duty, as a broker, to ascertain the property's zoning status, we need not decide this issue.

[19]Given our decision on the G. L. c. 93A issue, we need not reach the rather substantial issue of calculation of damages.