DANIEL DEWOLFE vs. HINGHAM CENTRE, LTD., & others.[1]

No. 10-P-473.

Plymouth. February 14, 2011. - November 9, 2011.

Present: RAPOZA, C.J., McHUGH, KAFKER, MEADE, & RUBIN, JJ.[2]

Further appellate review granted, 461 Mass. 1108 (2012).

*Broker. Negligence,* Misrepresentation. *Consumer Protection Act,* Unfair or deceptive act. *Zoning.*

In an action brought in Superior Court alleging that the defendants (a real estate agency and broker) misrepresented the zoning classification of a property offered for sale, the judge, in granting summary judgment in favor of the defendants, erred in concluding that the broker, who communicated to the plaintiff buyer several times and in several manners that the property at issue was zoned for commercial use, owed no duty to the plaintiff buyer to determine the proper zoning classification [769-770]; further, neither the plaintiff's representation by an attorney during the purchase and sale of the property [770-771] nor the disclaimer contained in the real estate listing [771] could, in the circumstances, serve as a basis for granting summary judgment in favor of the defendants.

In an action brought in Superior Court alleging that the defendants (a real estate agency and broker) misrepresented the zoning classification of a property offered for sale, the judge erred in granting summary judgment in favor of the defendants, where the broker had misrepresented the zoning classification in writing on more than one occasion, and the plain language of an exculpatory clause in the warranties and representations section in the purchase and sale agreement explicitly excluded representations previously made in writing. [771-774] MEADE, J., dissenting, with whom RAPOZA, C.J., joined.

In an action brought in Superior Court alleging misrepresentation and violation of G. L. c. 93A, the judge erred in granting the defendants' motion for summary judgment, where the defendants failed to demonstrate with respect to reasonable reliance the absence of any genuine issue of material fact. [774]

[1] M. Eileen Richards, Paul D. Tribuna, Lauren N. Tribuna, and J. Russell Hodgdon. Hodgdon is an attorney who cannot be located and never has been served with process in this case.

[2] This case initially was heard by a panel comprised of Chief Justice Rapoza and Justices Meade and Rubin. After circulation of the opinion to the other justices of the Appeals Court, the panel was expanded to include Justices McHugh and Kafker. See *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993).

CIVIL ACTION commenced in the Superior Court Department on November 6, 2006.

The case was heard by *Charles J. Hely*, J., on a motion for summary judgment, and entry of final judgment was ordered by him.

*Lawrence J. Rose* for the plaintiff.

*Terrance J. Hamilton* (*Andrew T. Imbriglio* with him) for Hingham Centre, Ltd., & another.

RUBIN, J. The plaintiff, Daniel DeWolfe, appeals from an order that granted summary judgment to two defendants, Hingham Centre, Ltd. (Hingham Centre), and M. Eileen Richards (collectively, defendants). On appeal, DeWolfe claims the judge relied on inapplicable case law to determine that the defendants owed no duty to DeWolfe and that genuine issues of material fact remain. We vacate the judgment and remand the matter for further proceedings.

1. *Background.* DeWolfe filed a complaint alleging misrepresentation and a violation of G. L. c. 93A against the defendants. Following discovery, the defendants moved for summary judgment, and their motion was allowed. DeWolfe's timely appeal followed.

2. *Facts.* After operating a hair salon in the town of Norwell (town or Norwell) for several years, DeWolfe began seeking possible sites to relocate his business. After seeing a real estate listing in a local newspaper, DeWolfe became interested in 461 Washington Street in Norwell, the property at issue here. The newspaper advertisement stated that the property was "[z]oned Business B" and that Hingham Centre was the realtor. DeWolfe called Hingham Centre to inquire about the property and was told that Richards was the listing broker. DeWolfe scheduled an initial viewing of the property, at which Richards was not present.

A second viewing was subsequently scheduled by DeWolfe's real estate broker, Bonnie S. Handrahan,[3] where DeWolfe informed Richards that he would like to purchase a property that would accommodate a six-station hair salon. At this second viewing, Richards provided DeWolfe with a copy of the multiple

---

[3]Handrahan was a defendant in this action until all claims against her were dismissed, and separate and final judgment entered.

listing service (MLS) listing, which she had prepared at approximately the same time she had advertised the property in the newspaper. The MLS listing stated that the property was zoned as "Business B" and also contained a disclaimer that stated:

> "The information in this listing was gathered from third party sources including the seller and public records. MLS Property Information Network and its subscribers disclaim any and all representations or warranties as to the accuracy of this information."

Richards also provided DeWolfe with the relevant pages of the Norwell zoning ordinance (ordinance). The pages were captioned "Business B," written in handwriting at the top, and included the word "hairdresser" as one of the "Permitted Business Uses" for properties located in a "Business B" district. Richards testified in her deposition that one of the owners of the property, Paul D. Tribuna, told her the property was zoned "Business B." Tribuna denied this contention and claimed he informed Richards that the property was zoned "Residential Business B."[4] Richards's notes, which she took during her conversation with Tribuna, described the property as "Business B/at home business."

Richards testified that she visited the Norwell zoning department to obtain a copy of the ordinance and placed the copies at the property for potential buyers. However, it is not clear from the record whether this was done before or after she listed the property in the local newspaper and prepared the MLS listing. At no time while visiting the Norwell zoning department, or at any other point, did Richards verify the zoning classification of the property. She did testify, however, that upon inspection of the property, she noticed residential dwellings on either side of the property and a business across the street.

DeWolfe testified that Richards informed him at the second viewing that he could purchase the property as a two-family residence and later legally convert it to a hair salon due to its

---

[4]There is no indication in the record that there is any such type of zoning district in Norwell. In any event, although it is irrelevant to the issues before us, the motion judge found that even the statement Tribuna claimed to have made was "materially wrong."

commercial zoning. DeWolfe told Richards that he would entertain the idea of converting the lower level of the property into his hair salon while residing in the upper level.

At some time before an offer to purchase the property was made, DeWolfe consulted his attorney. On October 9, 2004, De-Wolfe made an offer to purchase the property, which was contingent on his receiving approval of a hair salon by the town by October 25, 2004. On October 29, 2004, a purchase and sale agreement (agreement or contract) was executed with the same contingency that DeWolfe receive all the necessary permits, but the agreement required the permits to be obtained by November 16, 2004. The agreement — the parties used the Greater Boston Real Estate Board standard form purchase and sale agreement — contained the following language under the heading "WARRANTIES AND REPRESENTATIONS":

> "The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE."

DeWolfe obtained the permit required to install a special septic system for disposal of chemicals used in his business and was given approval for a six-station hair salon by the town board of health on November 15, 2004. A deed for the property was transferred to DeWolfe on December 13, 2004. DeWolfe did not receive a building permit to perform the intended renovations until January 26, 2005. In either late January or early February, 2005, DeWolfe learned that the property was not zoned in a "Business B" district, but rather in a "Residential B" district in which a six-station hair salon was not a permitted use.

3. *Discussion.* a. *Standard of review.* "The purpose of summary judgment is to decide cases where there are no issues of material fact without the needless expense and delay of a trial followed by a directed verdict." *Correllas* v. *Viveiros*, 410 Mass. 314, 316 (1991). In evaluating a motion for summary judgment, we view the evidence in the light most favorable to the nonmov-

ing party, in this case DeWolfe. See *Nova Assignments, Inc.* v. *Kunian*, 77 Mass. App. Ct. 34, 35 (2010). The moving party has the burden of demonstrating the absence of any genuine issue of material fact, *Arcidi* v. *National Assn. of Govt. Employees, Inc.*, 447 Mass. 616, 619 (2006), and an entitlement to judgment as a matter of law, see Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002); *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). Our review is de novo, see *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997); we consider the record and the legal principles involved without deference to the judge's reasoning. See *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005).

b. *Duty of broker.* "In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant, in the course of his business, made a false representation of material fact for the purpose of inducing the plaintiff to rely upon it, and that the plaintiff did rely upon the representation as true, to his damage." *Kitner* v. *CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 749 (2002), citing *Nycal Corp.* v. *KPMG Peat Marwick LLP*, 426 Mass. 491, 496 (1988). DeWolfe claimed that Richards, in several manners, misrepresented the zoning classification of the property, and that he purchased the property based on those misrepresentations. In granting summary judgment to the defendants, the judge relied on our decision in *Quinlan* v. *Clasby*, 71 Mass. App. Ct. 97 (2008), to determine that the defendants, as a real estate broker (Richards) and a real estate agency (Hingham Centre), had no duty to DeWolfe to determine the proper zoning classification of the property. On appeal, DeWolfe contends that the judge's reliance was misplaced. We agree.

In *Quinlan* v. *Clasby, supra* at 102-103, where a broker made no affirmative representations to a potential buyer concerning the zoning classification of the property at issue, we held that in the circumstances of that case, the broker had no duty to determine whether the property was being utilized "in compliance with the applicable zoning laws." *Id.* at 103.[5] In this case, however, Richards communicated to DeWolfe several times and

---

[5]Specifically, the broker in *Quinlan* advertised the house as a "three-family dwelling." 71 Mass. App. Ct. at 99. Before doing so, the broker was not merely told that the building was a three-family house, but she inspected it

in several manners that the property was zoned for commercial use and that DeWolfe would be allowed to operate his desired hair salon at the location. Richards listed the property as zoned "Business B" in a newspaper advertisement and in the MLS listing, both of which DeWolfe obtained copies of prior to his offer to purchase. Richards also orally advised DeWolfe of the property's commercial zoning classification during a viewing of the property. Unlike the broker in *Quinlan,* who said nothing about the zoning classification of the property, Richards made both written and verbal representations regarding zoning. Prior to doing so, she therefore had a duty to determine the proper zoning classification. *Quinlan* is, thus, not controlling in the circumstances of this case.

c. *Other bases for summary judgment.* The judge offered several other factors in support of his conclusion that Richards had no duty to investigate whether her zoning representations were correct. DeWolfe argues that these additional grounds, discussed *infra,* were insufficient to support summary judgment. We agree.

i. *Representation by an attorney.* First, the judge noted that DeWolfe had been represented by an attorney during the purchase and sale of the property. This, however, cannot serve as a basis for granting the defendants' motion for summary judgment. There was no evidence offered that DeWolfe sought advice from his attorney on zoning, or that DeWolfe's attorney was asked to do anything more than review and negotiate the agreement. See *Sheehy* v. *Lipton Indus.,* 24 Mass. App. Ct. 188, 194 (1987) (rejecting claim on summary judgment "that the plaintiff, an experienced businessman who had the benefit of legal counsel before he signed the purchase and sale agreement, could not

and found that it had three separate apartments in it, two upstairs and one downstairs. See *id.* at 98. She also obtained all relevant tax documents for the property. *Ibid.* In fact, there was a variance that permitted the building to be used as a three-family house, but the physical layout, in which two apartments were above the first floor, was not permitted under the variance. *Ibid.*

We concluded that in light of the investigation she actually undertook, the broker did not have an additional duty to discover that the particular configuration of the apartments in the building was not permitted under the variance. *Id.* at 103. We held that she did "all that was legally required of a real estate broker" before describing it as a "three-family" dwelling. *Ibid.*

have relied on any statement that might have been made about the land").

ii. *MLS listing disclaimer*. Second, while the disclaimer contained in the MLS listing may release the defendants from any liability as to misrepresentations made in that listing — something we need not and do not decide — no such disclaimer was included in the newspaper advertisement or written material provided to DeWolfe. Furthermore, such disclaimers cannot be used to forgive fraud or deceit, and whether the defendants' misrepresentations fall in the category of intentional, reckless, or merely negligent is a question to be determined by a jury. See *Sound Techniques, Inc.* v. *Hoffman*, 50 Mass. App. Ct. 425, 429-434 (2000).

iii. *Warranties and representations section of agreement*. Third, while an exculpatory clause was included in the warranties and representations section in the standard form purchase and sale agreement used by the parties, it explicitly excludes representations previously made in writing. As noted above, Richards misrepresented the zoning classification in writing on more than one occasion.

Our dissenting colleagues propose a contrary construction of the warranties and representations section, but the contract's meaning is clear. Again, that section reads in full:

> "The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): . . . ."

A space for additional warranties or representations follows. In this case, in that blank space appears the typewritten word "NONE."

The language is plain. The only warranties or representations upon which the buyer may rely are those "set forth or incorporated in this agreement or previously made in writing." Indeed, this is the way the language in the standard form purchase and sale agreement previously has been read by both this and other

courts. See *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. at 193 (indicating that language was applicable barring reliance upon warranties or representations "not set forth in this agreement or previously made in writing" because no warranty or representation "was set forth *or made*" [emphasis supplied]); *George* v. *Teare*, 12 Mass. L. Rep. 274 (Mass. Super. Ct. 2000) (Gants, J.) (holding that "this clause cannot foreclose liability because there indeed was a written representation" made prior to the signing of the purchase and sale agreement).

Contrary to the suggestion made in the dissent, *post* at 776, the holding in *George* is based solely on the court's reading of the text of the purchase and sale agreement. It is independent of and unrelated to the court's separate holding, in reliance on *Sheehy*, that a clause asserting that there was no reliance by the buyer upon a representation is not an automatic defense to a claim that the seller engaged in a fraudulent or deceitful misrepresentation. See *George, supra.* Similarly, *Sheehy* itself is cited above not for its holding with respect to claims of fraudulent misrepresentation, but because of the way in which we read the language of the agreement with respect to representations "previously made in writing."[6]

Our dissenting colleagues read the language referring to warranties or representations "previously made in writing" to do exactly the opposite of what is clearly stated in the contract: *not* to allow reliance upon such written warranties or representations. Not only is this a misreading of the plain language of the contract, it would render the language about representations previously made in writing superfluous in violation of a bedrock canon for construing contracts. See *Computer Sys. of America, Inc.* v. *Western Reserve Life Assur. Co. of Ohio*, 19 Mass. App. Ct. 430, 437-438 (1985) ("every word and phrase of a contract should, if possible, be given meaning, and . . . none should be treated as surplusage if any other construction is rationally possible"). Under the dissent's reading, the paragraph would

---

[6]Whether the allegations here are ones including fraud and deceit or not has nothing to do with our construction of the language of the agreement. Because the warranties and representations section is not an exclusion of reliance upon misrepresentations previously made in writing, it does not bar an action based on detrimental reliance on any such representations, whether fraudulently or merely negligently made.

have exactly the same effect if that language were absent and the contract stated only that the buyer had not "relied upon any warranties or representations not set forth or incorporated in this agreement, except for the following additional warranties and representations."

Our dissenting colleagues' response is that "adding specification does not render the second category surplusage," *post* at 775, but this is not an addition of specification. While including a place for "additional warranties and representations" that may be excepted from the general rule, the contract states that the buyer may not rely on any warranties or representations "not set forth or incorporated in this agreement *or* previously made in writing." If the contract meant the buyer could *not* rely on warranties or representations previously made in writing, the second phrase would be unnecessary because reliance on such written warranties or representations already would be forbidden by the language disallowing reliance on warranties or representations "not set forth or incorporated in this agreement." The second phrase would be surplusage. Nor does the inclusion of a blank space where the parties can list additional representations upon which the buyer may rely — something else to which the dissent refers, *post* at 775 — do anything to undermine the explicit language of the warranties and representations section that allows reliance on representations previously made in writing.

The case of *Cone* v. *Ellis*, 59 Mass. App. Ct. 748 (2003), cited in the dissent, does not address the issue in this case. *Cone* involved an oral representation. *Id.* at 749. It is quite clear that under the language of the agreement used here, which is the same as that at issue in *Cone*, a buyer may not rely on such representations. That is the basis of the *Cone* decision. *Id.* at 751-752.

Finally, the dissent also points to the word "nor." *Post* at 775. But that word has nothing to do with the issue here, coming as it does before the clause that describes what the buyer asserts he has not relied upon.

The dissent's proposed construction would have broad implications, because the language at issue appears in the Greater Boston Real Estate Board standard form purchase and sale

agreement. It would strip from every buyer using this form his or her right to rely upon *written* warranties or representations made by brokers or sellers, a right that every buyer and every lawyer until now properly has understood the buyer to have. The defendants did not even put forward this construction; while we are respectful of the views of our dissenting colleagues, its adoption would be a significant error.

iv. *Reasonable reliance.* Finally, the defendants argue that DeWolfe did not reasonably rely on the alleged misrepresentations. Given the record, however, they have not demonstrated with respect to reasonable reliance the absence of any genuine issue of material fact.

4. *Conclusion.* The judgment in favor of the two defendants, Hingham Centre and Richards, is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion. The defendants' request for costs pursuant to Mass.R.A.P. 26, as amended, 378 Mass. 925 (1979), is denied.

*So ordered.*

MEADE, J. (dissenting, with whom Rapoza, C.J., joins). Because the majority has, in my view, misread or misinterpreted the exculpatory clause, I respectfully dissent. The purchase and sale agreement contained the following language under the heading "WARRANTIES AND REPRESENTATIONS":

"The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement *or previously made in writing*, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE" (emphasis supplied).

In *Cone* v. *Ellis*, 59 Mass. App. Ct. 748, 749-752 (2003), we held that due to this very same exculpatory clause, the seller's misrepresentations were not actionable. Even though the misrepresentations in *Cone* were made orally, the clause, as highlighted *supra*, also excludes the buyer's reliance on representations previously made in writing. Importantly, Richards was a party to the agreement and its protections.

The majority's construction of the exculpatory clause ignores the word "nor," which precedes the "warranties or representations" the buyer agrees he has not relied upon in the transaction. The warranties or representations that the buyer states he has *not* relied upon are broken down into two categories: (1) those "not set forth or incorporated in this agreement or" (2) those "previously made in writing." After that, the parties may write in any exceptions, and here they added "NONE." The clause thus sets forth two types of things which, the buyer agrees, have not influenced him and upon which he did not rely when he entered the transaction. Unlike the majority, I cannot read those "previously made in writing" to be an exception, because the final clause of the sentence explicitly sets out what is to be excepted, which would be what the parties may write in after the colon. Also, adding specification does not render the second category surplusage. Finally, I do not share the majority's concern about stripping away a buyer's right to rely on certain warranties or representations, because buyers will be free to add them to the agreement in the space following the colon, which was not done here.

Finally, as the Superior Court judge noted, Daniel DeWolfe was represented by an attorney during the purchase and sale of the property. Given that, and further given that whatever duty may have existed that separates this case from *Quinlan* v. *Clasby*, 71 Mass. App. Ct. 97 (2008), I agree with the judge that the misrepresentation claim is precluded by this clause. See *Cone* v. *Ellis*, *supra* at 752. See also *Greenery Rehabilitation Group, Inc.* v. *Antaramian*, 36 Mass. App. Ct. 73, 75-76 (1994). Compare *McCartin* v. *Westlake*, 36 Mass. App. Ct. 221, 232 (1994) ("much of what is said during the negotiation of a business agreement never becomes part of the final bargain. Only what matters is reduced to writing and signed").[1]

Finally, while the majority is correct that in general an exculpatory clause cannot be used to forgive fraud or deceit, see *Sound Techniques, Inc.* v. *Hoffman*, 50 Mass. App. Ct. 425, 429-434 (2000), DeWolfe's complaint alleged neither, and instead, I, like

---

[1]"As to the c. 93A claim, . . . it is absorbed in and vanishes with the misrepresentation claim." *Fernandes* v. *Rodrigue*, 38 Mass. App. Ct. 926, 928 (1995).

the judge, read the complaint to have alleged negligence. Indeed, pursuant to Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), averments of fraud and the circumstances constituting that fraud must be stated with particularity in the complaint. See *Masingill* v. *EMC Corp.*, 449 Mass. 532, 545 (2007). Such particularity was decidedly absent here, and the judge was not required to read it into the complaint. See *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 463 n.7 (1997) (court will not consider averments of fraud not pleaded with particularity). Because this case does not involve allegations of fraud and deceit, the case of *Sheehy* v. *Lipton*, 24 Mass. App. Ct. 188 (1987), upon which DeWolfe and the majority rely, is inapposite. Similarly, the Superior Court case cited by the majority as authority relies on our opinion in *Sheehy*, and thus does not inform the outcome here.