## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-11316

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2015

Lyle W. Cayce
Clerk

ARMANDO YBARRA,

Plaintiff - Appellee

v.

DISH NETWORK, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Armando Ybarra filed suit against DISH Network, L.L.C. for violations of the Telephone Consumer Protection Act. DISH called Ybarra's cell phone 15 times to collect an unpaid balance. The district court entered partial summary judgment sustaining Ybarra's claims regarding seven of the calls. Claims as to the other eight calls were later settled. On this appeal which solely relates to the seven calls, we conclude the district court erred in granting Ybarra's motion for partial summary judgment. Summary judgment should have been granted to DISH on four of the seven calls. DISH has conceded liability as to the other three calls. We REVERSE and REMAND.

No. 14-11316

FACTUAL AND PROCEDURAL BACKGROUND

In June 2012, a person who is not involved in this litigation entered into an agreement with DISH to receive satellite-television services. As part of the agreement, the DISH customer authorized DISH to contact him at a specific number, which we refer to as the "3475 number." DISH could use the number "to recover any unpaid portion of [his] obligation," if necessary. In May 2013, Armando Ybarra acquired the 3475 number after, presumably, the DISH customer relinquished it.

At some point, the DISH customer stopped paying for the television services. DISH began to call the 3475 number, which now belonged to Ybarra, to collect what the other person owed. DISH called the 3475 number 15 times between May 3, 2013, and October 29, 2013, using two different phone numbers. Seven calls were placed from a number ending in "8047" and eight calls from a number ending in "3474." This appeal involves only the seven calls from DISH's 8047 number, which were made using a "Cisco Dialer." That device plays prerecorded messages when calls are met by a "positive voice," which may be either an actual human voice or a recorded voicemail greeting. The following summarizes the result of each call:

| Call Number | Date of Call | Result |
| --- | --- | --- |
| 1 | 05/04/13 | Positive Voice |
| 2 | 05/18/13 | Answering Machine |
| 3 | 06/01/13 | Answering Machine |
| 4 | 06/15/13 | Answering Machine |
| 5 | 06/29/13 | Data Error-No Value |
| 6 | 07/01/13 | Positive Voice |
| 7 | 10/29/13 | Positive Voice |

No. 14-11316

Ybarra filed suit against DISH in December 2013, in the United States District Court for the Northern District of Texas, alleging that DISH violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Specifically, Ybarra alleged that DISH violated the TCPA by calling his phone using an automatic telephone dialing system ("ATDS") and/or by using an artificial or prerecorded voice without Ybarra's prior express consent. The parties filed cross-motions for summary judgment.

On November 14, 2014, the district court: (1) granted Ybarra's motion for summary judgment in part on the seven calls from DISH's 8047 number, (2) denied Ybarra's motion for summary judgment in part on the other eight calls, and (3) denied DISH's motion in full. The district court reasoned that "[w]ithout needing to determine whether the CISCO Dialer is an ATDS, Defendant has admitted to using a prerecorded voice in calls from the 8047 number. Because the TCPA prohibits *making any* call using a prerecorded voice, DISH concedes that the prerecorded voice was present in the calls from the 8047 number regardless of whether Ybarra triggered it with a positive voice." The district court determined that Ybarra was entitled to statutory damages of $500 per call, or $3,500 in total.

A few weeks after the district court's November 14 ruling, the parties stipulated to dismissal of the claims related to the remaining eight calls. They jointly filed a settlement agreement and a stipulation of dismissal. In that document, they agreed to dismiss Ybarra's eight remaining claims while expressly providing that the agreement did not affect DISH's right to appeal from the partial summary judgment. The parties also filed a "Joint Proposed Judgment Entry." On December 11, the court entered its own "Final Judgment," which used slightly different language than in the parties' proposal. DISH timely appealed that final judgment.

No. 14-11316

DISCUSSION

Ybarra argues that this court lacks jurisdiction because the final judgment, which implemented the parties' agreement to settle the remainder of the case, did not reserve DISH's right to appeal from the earlier partial summary judgment. We begin our review by analyzing jurisdiction, then turn to the validity of the district court's entry of partial summary judgment.

## I.     *Jurisdiction over DISH's appeal*

Four weeks after the district court granted in part Ybarra's motion for summary judgment, the parties jointly filed two documents. One was a "Notice of Settlement and Stipulation of Dismissal with Prejudice as to Non-adjudicated Claims." There, the parties referred to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which provides for a voluntary dismissal of a suit by the plaintiff. The notice also stated that the parties "stipulate to the dismissal with prejudice of all claims for which summary judgment was not granted. . . . This stipulation does not apply to or affect the adjudicated seven telephone calls . . . as adjudicated in the Court's Memorandum Opinion and Order (Doc. 64) and does not impact DISH's right to appeal that Order, which issues are addressed in the separately filed joint proposed judgment entry."

On the same day, the parties also submitted a proposed judgment containing complementary language. On appeal, Ybarra relies on the fact that DISH's right to appeal was not expressly reserved, either in the parties' proposed judgment or the district court's slightly simpler final judgment. The judgment actually entered read: "The Court has entered its order granting in part Plaintiff's Motion for Summary Judgment, and the parties have stipulated to dismissal with prejudice of all claims for which summary judgment was not granted. It is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is GRANTED . . . ."

4

No. 14-11316

Ybarra contends that DISH waived its right to appeal by consenting to the entry of this final judgment. Ybarra relies on a decision from this court in which we reviewed a consent judgment that was entered just prior to trial. *Amstar Corp. v. S. Pac. Transp. Co. of Tex. & La.*, 607 F.2d 1100 (5th Cir. 1979) (per curiam). In *Amstar*, the district court granted a partial summary judgment that limited the plaintiff's damages. Later, in the parties' consent judgment that dealt with the issue of liability, the parties sought to reserve the plaintiff's right to appeal the earlier limitation of damages. *Id.* at 1100. We held the reservation was ineffective because "both parties freely consented to the entry of a final judgment." *Id.*

Our authority for the holding in *Amstar* was a case involving a dispute over attorney's fees. *White & Yarborough v. Dailey*, 228 F.2d 836, 836−37 (5th Cir. 1955). The district court awarded the attorneys a fee of $1,000; on appeal the attorneys argued they should receive $2,000, which their client at the beginning of the case had agreed to pay. *Id.* at 837. The client filed no brief. We stated that the judgment containing the $1,000 fee was entered by agreement. A party cannot accept some parts of such a judgment and appeal from parts less to its liking: "Appeals, in short, can be taken only where a judgment has been entered adversely to the parties seeking to appeal and where the record shows timely and adequate objection made thereto." *Id.* at 837. There is no indication that the attorneys reserved the right to appeal in the consent judgment or even mentioned its disagreeing to the fee award.

Because of the absence of any reservation in the consent judgment, *White & Yarborough* was not on-point authority for the decision in *Amstar* that the right to appeal a previous district court ruling cannot be effectively reserved in the final settlement of a case. In fact, *White & Yarborough* seemingly was just upholding the bargain — a party's lawyer cannot unreservedly participate in the offering of an agreed judgment, then appeal with some previously

unmentioned objection. Another circuit has identified *Amstar* as creating a rule unique to the Fifth Circuit that has been rejected by all other circuits to consider the point. *Downey v. State Farm Fire & Cas. Co.,* 266 F.3d 675, 683 (7th Cir. 2001).[1] Even if we are unique, *Amstar* is binding precedent. But it binds only as far as its holding. We examine that closely.

In *Amstar*, the pretrial ruling, for which the right to appeal was unsuccessfully reserved, was on "the proper measure of damages resulting from damage done to a shipment of sugar" transported by the defendant from the plaintiff's factory. 607 F.2d at 1100. All remaining contested issues were then consensually resolved, including the amount of damages to be awarded under the limitation earlier adjudged by the court. *Id.* Thus, there was one litigated event — the transportation of the sugar — and one claim to damages. The consent judgment was the final step in fully resolving a single claim.

We later characterized *Amstar* as barring appeals when there is a consent judgment, "even if the consent judgment contains an acknowledgment of one party's intent to appeal," but only when the appeal dealt with "an issue" of the consent judgment. *Strouse v. J. Kinson Cook, Inc.*, 634 F.2d 883, 884 n.1

---

[1] Professors Wright and Miller concluded that our decision in *Amstar* was wrong.

> If the parties [in *Amstar*] in fact both agreed that an appeal would remain open to test the measure of damages, the court's decision is wrong. Justice Blackmun dissented from denial of certiorari, arguing that the plaintiff should "not be foreclosed by a strict concept of consent and acceptance in the face of facts that the asserted consent was specifically limited and that [plaintiff] consistently and persistently disclaimed full settlement of the lawsuit." [*Amstar Corp. v. S. Pac. Transp. Co. of Tex. & La.*, 449 U.S. 924, 927 (1980) (Blackmun, J., dissenting from denial of grant of certiorari)].

15A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3902 n.63 (2d ed. 1992).

(5th Cir. Unit B Jan. 1981) (per curiam).  That is our reading of *Amstar* as well.  The present appeal is readily distinguishable.

In the present case, there were two separate groups of phone calls, distinguished by the equipment and the phone number used to place the calls.  As the district court's rulings themselves show, there were distinctions among the claims that required different analysis.  Settlement of one set of claims did not affect the analysis applicable to the other set of claims.  *Amstar* only precludes the appeal of a claim directly covered by the consent judgment.  Here, claims subject to the partial summary judgment are independent of the settled claims.   The reservation of a right to appeal was effective.

## II.    *The district court's entry of partial summary judgment*

We review a grant of summary judgment de novo, applying the same standards as the district court.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to "make any call . . . using any automatic telephone dialing system ['ATDS'] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."  47 U.S.C. § 227.  The district court held that it did not need to determine whether DISH used an ATDS because DISH "admitted to using a prerecorded voice" and "the TCPA prohibits *making any call* using a prerecorded voice . . . regardless of whether Ybarra triggered it with a positive voice."  DISH concedes that it violated the TCPA by making calls 1, 6, and 7 using a prerecorded voice.  Nonetheless, it contends that the district court erred in holding that DISH violated the TCPA in making calls 2 through 5.  DISH proffers that none of these calls resulted in a prerecorded voice being

*used* because no prerecorded voice was *played* as these calls were not met by a positive voice.[2]

To be liable under the "artificial or prerecorded voice" section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play. A couple of considerations compel this conclusion. First, under traditional rules of statutory interpretation, we "look at the plain meaning of the statutory language." *United States v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011). In the context of the TCPA, the word "using" is best interpreted as meaning the artificial voice "spoke." That the prerecorded voice was on standby as the call was placed is not sufficient when the statute requires that the voice be "used."

Second, the TCPA makes it unlawful to make any call using an "automatic telephone dialing *system*." In contrast, it is not unlawful under the TCPA to make a call using an artificial or prerecorded voice *system*. Rather, what is precluded by the TCPA is making a call using "an artificial or prerecorded *voice*." The omission of the word "system" must be given effect. *See Burnett Ranches, Ltd. v. United States*, 753 F.3d 143, 148 (5th Cir. 2014).

We hold that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA. Instead, the prerecorded voice must "speak" during the call. A party who makes a call using an automatic telephone dialing system uses the *system* to make the call, regardless of whether the recipient answers, and thereby triggers TCPA liability. With a

---

[2] Ybarra alternatively argues that DISH made the calls using an ATDS. If that is so, then DISH's possible violations of the TCPA would not turn on the "prerecorded voice" analysis. This claim was not explicitly resolved by the district court. Instead, the court determined that the CISCO-dialer manual, which was the only purported factual support for Ybarra's argument, was unauthenticated and inadmissible hearsay. Because Ybarra has not cross-appealed the district court's ruling excluding the manual, the exclusion stands. *Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 211 (5th Cir. 2014). Thus, there is no evidence that DISH used an ATDS, and Ybarra's alternative argument fails.

prerecorded voice, though, unless the recipient answers, an artificial or prerecorded voice is never *used*. Indeed, the several cases that Ybarra cites for the proposition that making a call with a prerecorded voice is sufficient for liability are actually cases involving the use of an ATDS. *See, e.g., Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013).

DISH conceded that phone calls number 1, 6, and 7 created TCPA liability. Its motion for summary judgment stated that Ybarra was entitled to $500 per call for those three calls, but it also argued the claims for calls 2 through 5 should be dismissed. That motion should have been granted.

We REVERSE the grant of Ybarra's motion for partial summary judgment. We REMAND to the district court to enter judgment for Ybarra in the amount of $1,500.