## DANIEL DEWOLFE *vs.* HINGHAM CENTRE, LTD., & others.[1]

Plymouth. December 3, 2012. - April 11, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Broker. Negligence,* Real estate broker, Misrepresentation. *Zoning.*

In an action brought in Superior Court alleging that the defendants (a real estate agency and broker) misrepresented the zoning classification of a property offered for sale, the judge erred in granting summary judgment in favor of the defendants, where the broker owed a duty to exercise reasonable care in making representations to prospective buyers, and where the evidence could support a finding that the broker, who was on notice that the information provided by the seller regarding the zoning classification might be unreliable, did not exercise reasonable care when making written representations without further investigation [799-802]; further, the warranties and representations clause of the purchase and sale agreement, which permitted reliance on prior written representations not set forth or incorporated in the agreement, did not relieve the defendants of any liability [802-806].

CIVIL ACTION commenced in the Superior Court Department on November 6, 2006.

The case was heard by *Charles J. Hely,* J., on a motion for summary judgment, and entry of final judgment was ordered by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Terrance J. Hamilton* (*Andrew T. Imbriglio* with him) for the defendants.

*Lawrence J. Rose* for the plaintiff.

*Diane C. Tillotson & Shana E. Maldonado,* for Massachusetts Association of Realtors & another, amici curiae, submitted a brief.

LENK, J. This case arises from certain incorrect representations that a real estate broker made to prospective buyers about

---

[1]M. Eileen Richards, Paul D. Tribuna, Lauren N. Tribuna, J. Russell Hodgdon, and Bonnie S. Handrahan.

the zoning classification of a listed property. The plaintiff purchased the property after having received the incorrect information and was thereafter unable to use the property as he had intended. We are called upon to decide whether, in the circumstances, a broker has a duty to investigate before making representations as to the zoning classification of a property. We are also called upon to decide whether an exculpatory clause concerning warranties and representations, contained in a standard form purchase and sale agreement, precludes the buyer from relying on the broker's prior written representations as to zoning classification.

We conclude that a broker has a duty to exercise reasonable care in making representations as to a property's zoning designation. Where, as here, the misrepresentations were based on information provided by the seller, the question turns on whether it was reasonable in the circumstances to rely upon such information, a question to be determined by the trier of fact. We further conclude that the exculpatory clause in the purchase and sale agreement does not preclude the buyer's reliance on prior written representations. Because the defendants have not satisfied their burden of establishing an entitlement to judgment as a matter of law, see Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002), we vacate the judgment.[2]

1. *Background.* The following facts are undisputed. M. Eileen Richards was a licensed real estate broker employed by the real estate agency Hingham Centre, Ltd. (Hingham Centre). In August, 2004, Paul D. Tribuna (Tribuna) and Lauren N. Tribuna, the owners of a property located at 461 Washington Street in Norwell (property), retained Richards and Hingham Centre to list the property and broker it for sale. Tribuna told Richards either that the property was zoned "Residential Business B" or that it was zoned "Business B."[3] "Residential Business B" is

---

[2]We acknowledge the amicus brief of the Massachusetts Association of Realtors and the Greater Boston Real Estate Board.

[3]It is undisputed that Tribuna was the source of Richards's information as to the property's zoning designation. While Richards testified in her deposition that Tribuna told her the property was zoned "Business B," Tribuna stated in his answers to DeWolfe's first set of interrogatories, "I believe I said to Eileen Richards that the property was zoned Residential Business B." Richards's

not a zoning designation in Norwell. Richards, who had experience listing and brokering for sale properties in Norwell, was not aware of any prior business use of the property, and although she saw businesses located across the street, she observed only houses and not businesses adjoining the property on either side. Richards subsequently advertised the property in at least two newspapers as being zoned "Business B."

DeWolfe is a professional hairdresser. In 2000, he began looking for a location for a six-station hair salon. DeWolfe saw one of the advertisements for the property that Richards had placed, and telephoned Hingham Centre to arrange a viewing. His first visit to the property was brief, and Richards was not present. He arranged for a second viewing, during which Richards was present. At this viewing, DeWolfe told Richards that he was considering the property as a possible location for a six-station hair salon. DeWolfe saw a copy of the multiple listing service (MLS) listing for the property that Richards had prepared. The listing stated that the property was "zoned Business B."[4] Additionally, DeWolfe saw a copy of the relevant section of the Norwell zoning ordinance, which Richards had placed at the property with the phrase "Business B" handwritten at the top of the page. The ordinance lists "hairdresser" as a permissible use of properties zoned "Business B."

On October 9, 2004, DeWolfe made a written offer to purchase the property. On October 29, 2004, DeWolfe and the Tribunas executed a standard form purchase and sale agreement, which was provided by Richards and Hingham Centre.[5] Paragraph 25

handwritten notes from her meeting with Tribuna state, "Business B / at home business." It is undisputed that properties zoned "Business B" in Norwell may not be used for at-home businesses; properties zoned "Residential B" may be used for that purpose, so long as the at-home business is "conducted by a person residing on the premises and involv[es] not more than two additional operatives."

[4] A disclaimer on the multiple listing service (MLS) listing states, "The information in this listing was gathered from third party sources including the seller and public records. MLS Property Information Network and its subscribers disclaim any and all representations or warranties as to the accuracy of this information." The other written representations made by Richards were not accompanied by comparable language.

[5] The standard form agreement is Greater Boston Real Estate Board Form No. RA151.

of the agreement, captioned "Warranties and Representations," states:

> "The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE."

On December 13, 2004, the Tribunas conveyed the deed to the property to DeWolfe. In January or February of 2005, De-Wolfe learned that the property was zoned "Residential B" rather than "Business B," and that a six-station hair salon was not among the permitted uses of the premises.[6]

In 2006, DeWolfe filed this action against Richards and Hingham Centre, alleging misrepresentation and violation of G. L. c. 93A, § 2.[7] His amended complaint alleges that "the Tribunas made material representations to Richards . . . that the property was zoned 'Business B,' " and that Richards's "representation[s] regarding the zoning of the property were known by [the Tribunas] and by . . . Richards to be false, or should have [been] known by [them] to be false."[8]

Richards and Hingham Centre moved for summary judgment.

---

[6] In Norwell, properties zoned "Residential B" may be used for "[c]ustomary house occupations, conducted within the dwelling, such as . . . hair dressing . . . conducted by a person residing on the premises and involving not more than two additional operatives." Properties zoned "Business B" may be used for "service establishments . . . including but not limited to personal services shops of a . . . hairdresser."

[7] In his original complaint, DeWolfe named the Tribunas as additional defendants. In his amended complaint, he added claims against Hodgdon, the attorney who represented him with regard to the purchase of the property, and Bonnie S. Handrahan, his own real estate broker with regard to the transaction. The Tribunas are not parties to this appeal; it is not clear from the record whether De-Wolfe's claims against them are still pending below. Hodgdon has never been served with process in this case. The claims against Handrahan were dismissed pursuant to a grant of summary judgment, which DeWolfe did not appeal.

For convenience, we refer to Richards and Hingham Centre as "the defendants."

[8] Although DeWolfe's amended complaint does not specify whether his misrepresentation claim is for negligent misrepresentation, or intentional or

A Superior Court judge granted the defendants' motion,[9] and DeWolfe appealed. The Appeals Court vacated the judgment and remanded the case for further proceedings. *DeWolfe* v. *Hingham Centre, Ltd.*, 80 Mass. App. Ct. 765 (2011). We allowed the defendants' petition for further appellate review.

2. *Standard of review.* "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " *Juliano* v. *Simpson*, 461 Mass. 527, 529-530 (2012), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Because our review is de novo, we accord no deference to the decision of the motion judge. *Federal Nat'l Mtge. Ass'n* v. *Hendricks*, 463 Mass. 635, 637 (2012). The moving parties, here the defendants, have the burden of establishing that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *Dias* v. *Brigham Med. Assocs., Inc.*, 438 Mass. 317, 319 (2002).

3. *Discussion.* To prove the tort of negligent misrepresentation, a plaintiff must establish that the defendant, (1) in the course of her business, or in a transaction in which she had a

---

reckless misrepresentation, fraud has not been pleaded with sufficient particularity to state a claim for intentional or reckless misrepresentation. See *Masingill* v. *EMC Corp.*, 449 Mass. 532, 545 (2007). The amended complaint alleges that the Tribunas told Richards the property was zoned "Business B" but alleges no facts establishing that Richards knew this information to be false. See *O'Connor* v. *Merrimack Mut. Fire Ins. Co.*, 73 Mass. App. Ct. 205, 212 (2008), quoting *Barrett Assocs., Inc.* v. *Aronson*, 346 Mass. 150, 152 (1963), quoting *Kilroy* v. *Barron*, 326 Mass. 464, 465 (1950) ("To prove his claim of an intentional or reckless misrepresentation, [the plaintiff] was required to 'prove that [the defendant] made a false representation of a material fact with knowledge of its falsity' "). Accordingly, we treat the misrepresentation claim in DeWolfe's amended complaint as a claim for negligent misrepresentation.

[9]The judge allowed the defendants' motion for summary judgment on both the misrepresentation claim and the G. L. c. 93A claim. See *Fernandes* v. *Rodrigue*, 38 Mass. App. Ct. 926, 928 (1995). For the purposes of summary judgment, the claims stand or fall together, as negligent misrepresentation may be a sufficient basis for liability under G. L. c. 93A. See *Swanson* v. *Bankers Life Co.*, 389 Mass. 345, 349 (1983) ("recovery may be had for a deceptive act that is the result of a defendant's negligence. . . . But not every negligent act is unfair or deceptive and thus unlawful under G. L. c. 93A, § 2"); M.C. Gilleran, The Law of Chapter 93A § 4.5 (2d ed. 2007). Whether they stand or fall together at trial will depend on the evidence presented.

pecuniary interest, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that she (6) failed to exercise reasonable care or competence in obtaining or communicating the information. See *Gossels* v. *Fleet Nat'l Bank*, 453 Mass. 366, 371-372 (2009), citing *Nycal Corp.* v. *KPMG Peat Marwick LLP*, 426 Mass. 491, 495-496 (1998); Restatement (Second) of Torts § 552 (1977).

The defendants claim that they are entitled to judgment as a matter of law because a real estate broker has no duty to confirm the zoning status of a property that the broker lists and brokers for sale. The defendants claim as well that, even if Richards had a duty to investigate the zoning designation of the property before making representations concerning it, the warranties and representations clause in the purchase and sale agreement relieves them of any liability.[10]

a. *Duty of broker.* Pursuant to the common-law doctrine of negligent misrepresentation, a real estate broker, like any person engaged "in the course of his business," may be liable for failing to exercise reasonable care in making representations to prospective buyers. See *Gossels* v. *Fleet Nat'l Bank, supra* at 372; *Maxwell* v. *Ratcliffe*, 356 Mass. 560, 562-563 (1969). While a broker ordinarily may rely on information provided by the seller in making representations about a property, a broker is not insulated from all liability merely by virtue of such reliance. See *Hoffman* v. *Connall*, 108 Wash. 2d 69, 77 (1987) ("A real estate broker must take reasonable steps to avoid disseminating false information to buyers"). The critical question is whether the broker "failed to exercise reasonable care or competence in obtaining or communicating the information." *Gossels* v. *Fleet Nat'l Bank, supra.* See *Fernandes* v. *Rodrigue*, 38 Mass. App.

---

[10]The defendants also maintain that they are entitled to summary judgment on other grounds, viz., that DeWolfe waived his claims against them and that he cannot establish either the element of causation or the element of justifiable reliance. See *Gossels* v. *Fleet Nat'l Bank*, 453 Mass. 366, 371-372 (2009). Each of these asserted grounds, however, rests upon material facts that are in dispute, and summary judgment is accordingly unwarranted. See *Juliano* v. *Simpson*, 461 Mass. 527, 529-530 (2012), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

Ct. 926, 928 (1995) (broker may rely on "information reasonably thought to be reliable"). Where it is reasonable in the circumstances for a broker to rely on information provided by the seller, the broker will not be liable for conveying such information to prospective buyers without conducting further investigation. See, e.g., *Quinlan* v. *Clasby*, 71 Mass. App. Ct. 97, 103 (2008).

By contrast, where it is unreasonable in the circumstances for a broker to rely on information provided by the seller, the broker has a duty to investigate further before conveying such information to prospective buyers. See Restatement (Third) of Agency § 7.01 comment d (2006) ("In some situations, an agent may have a duty to inquire further when provided with information by the principal or by a coagent. The agent's duty of inquiry may stem from . . . circumstances that make it unreasonable to rely on the information provided without further inquiry"). Cf. *Maxwell* v. *Ratcliffe*, *supra* (brokers liable for deceit in misrepresenting cellar as dry, where listing, of which brokers did or should have had knowledge, noted periodic water seepage).

The case of *Quinlan* v. *Clasby*, *supra*, is not to the contrary, instead illustrating the proposition that a broker may rely on information provided by the seller, except where circumstances put the broker on notice that such information may be unreliable. There, the trial evidence established that the seller of a property told his broker the property was a "three-family," and that the broker saw that the property was currently in use as a three-family residence. *Id.* at 98. The broker advertised the property as a "three-family residence."[11] *Id.* at 98-99. However, it was later discovered that, as configured, the property could not lawfully be used for that purpose. *Id.* at 99. In holding that the broker had no liability under G. L. c. 93A, § 11, for the incorrect information she conveyed, the Appeals Court stated that "[t]he broker was under no duty, under the facts of this

---

[11]The broker had also obtained tax records indicating that the property previously had been taxed as a four-family residence. *Quinlan* v. *Clasby*, 71 Mass. App. Ct. 97, 98 (2008). The broker testified that "she had knowledge that the building was at one point a four-family house." *Id.* at 98 n.5. The Appeals Court concluded that the broker could not, solely by such knowledge, "be held to reasonably know that the three-family configuration of the property did not conform with zoning requirements." *Id.* at 103 n.17.

case, to determine if the property was in compliance with the applicable zoning laws. . . . There was little, if any, reason for the broker to suspect that the property was not lawfully a three-family residence." *Id.* at 103.

Here, viewing the evidence in the light most favorable to De-Wolfe, a trier of fact could find that Richards failed to exercise reasonable care in making representations as to the zoning status of the property. A trier of fact could conclude that Tribuna told Richards, an experienced real estate broker, that the property was zoned "Residential Business B"; "Residential Business B" is not an actual zoning designation in Norwell; Richards advertised the property as zoned "Business B" instead; Richards was aware of no prior business use of the property; and Richards observed houses, not businesses, adjoining the property on either side. A trier of fact could find that Richards was on notice that the information provided by Tribuna might be unreliable, and that Richards acted unreasonably in representing the property as zoned "Business B" without first conducting further investigation.[12]

Because a broker has a duty to exercise reasonable care in making representations to prospective buyers, and because the evidence of record could support a finding that Richards did not exercise reasonable care when representing the property as zoned "Business B," the defendants have failed to establish that they are entitled on this basis to judgment as a matter of law. See *Dias* v. *Brigham Med. Assocs., Inc., supra.*

b. *Warranties and representations clause.* The defendants claim that, even if the broker had a duty in the circumstances to investigate the zoning designation of the property, the warranties and representations clause in the purchase and sale agreement nonetheless relieves them of any liability for prior misrepresentations. That clause provides:

> "The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he

---

[12]Hingham Centre's liability, if any, is grounded in the doctrine of respondeat superior. See *Dias* v. *Brigham Med. Assocs., Inc.,* 438 Mass. 317, 319-320 (2002) ("respondeat superior is the proposition that an employer . . . should be held vicariously liable for the torts of its employee . . . committed within the scope of employment").

relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE."

While the defendants read this exculpatory clause as precluding reliance on prior representations made in writing, DeWolfe construes it in precisely the opposite manner, i.e., as permitting reliance on such representations. Because there were no "additional warranties and representations" listed at the end of the paragraph, nor were any pertinent warranties or representations "set forth or incorporated" elsewhere in the agreement, DeWolfe's negligent misrepresentation and G. L. c. 93A claims by necessity rest only upon certain of the prior written representations made by Richards. The meaning of the exculpatory clause is pivotal in this regard.

The parties' differing interpretations of the clause center upon whether the word "not," where it appears for the second time ("not set forth or incorporated in this agreement or previously made in writing"), applies only to the phrase "set forth or incorporated in this agreement" or as well to the subsequent phrase "previously made in writing." DeWolfe contends that the word "not" applies to both phrases, while the defendants maintain that it applies only to the first phrase. Reduced to essentials and phrased affirmatively, DeWolfe maintains that the clause permits the buyer to rely only on warranties and representations made by the seller or broker that either (a) are set forth or incorporated elsewhere in the agreement, (b) were previously made in writing, or (c) are expressly listed at the end of that paragraph. The defendants advance a contrary reading to the effect that the buyer is permitted to rely only on the warranties and representations set forth or incorporated in the agreement, including those expressly listed at the end of the paragraph.

In construing this clause, we turn to familiar rules, including the standard rules of grammar. See *Twiss* v. *Simpson*, 183 Mass. 212, 216-217 (1903) (rules of grammar are to be "generally adhered to"). Where there is no ambiguity, we "construe the words of a contract in their usual and ordinary sense." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998), quoting *Hakim*

v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). Wherever practicable, we interpret a contract so that every word is given effect. *Hagerty* v. *Myers*, 333 Mass. 387, 388 (1955), quoting *Rocci* v. *Massachusetts Acc. Co.*, 222 Mass. 336, 343 (1916). If a contractual provision is ambiguous, we construe it against the drafter. *Costa* v. *Brait Bldrs. Corp.*, 463 Mass. 65, 76 (2012), citing Restatement (Second) of Contracts § 206 (1981). Here, we conclude that the clause permits reliance by the buyer on prior written representations made by the seller or broker that are not set forth or incorporated in the agreement. The standard rules of grammar support this construction, one which gives effect to every word of the clause.

Where the adverb "not" precedes two phrases linked by the conjunction "or," it applies without more to both phrases. See H.L. Fowler, A Dictionary of Modern English Usage 422-423 (2d ed. 1983) (Fowler). See also *Globe Indem. Co.* v. *Teixeira*, 230 F. Supp. 451, 454 (D. Haw. 1964), aff'd, 349 F.2d 502 (9th Cir. 1965). Cf. *Bate Refrigerating Co.* v. *Sulzberger*, 157 U.S. 1, 20 (1895) (patent statute requires that invention sought to be patented is one "not known or used before the application").[13] Indeed, it is generally a grammatical error to include a second negative modifier, such as "not" or "without," after the conjunction "or," as such repetition alters the meaning of the sentence. Fowler, *supra* ("there is much difference between *without falsehood or deceit* [which implies that neither is present] and *without falsehood or without deceit* [which implies only that one of the two is not present]" [emphasis in original]).

Notwithstanding this, the defendants maintain that the word

---

[13]Our own rules of professional conduct employ the word "not" on multiple occasions to modify two subsequent phrases linked by the conjunction "or." See, e.g., Mass. R. Prof. C. 1.5, as appearing in 459 Mass. 1301 (2011) ("A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee or collect an unreasonable amount for expenses"); Mass. R. Prof. C. 1.8, 436 Mass. 1338 (1998) ("A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client"); Mass. R. Prof. C. 3.1, 426 Mass. 1381 (1998) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous"); Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person").

"not" applies only to the first of the two phrases linked by the conjunction "or." Under this view, in order to negate the phrase after the word "or," it would be necessary to add a word, i.e., an additional "not," so that the clause would read, "nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or *not* previously made in writing." See *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984) ("We are not free to revise [a contract]"). However, far from achieving the meaning DeWolfe desires, inserting this additional "not" would indicate that either one of the two conditions ("not set forth or incorporated in this agreement" or "not previously made in writing") would alone suffice to preclude the buyer from relying on a given representation. See Fowler, *supra.* Such a revision would alter the meaning of the clause in a manner plainly contrary to its intended import, precluding the buyer from relying on any warranty or representation set forth in the agreement unless it had also previously been made in writing.

Therefore, we understand the word "not," where it appears for the second time in the clause, to apply to both of the phrases that follow it, as the phrases are linked by the conjunction "or." See *Sheehy* v. *Lipton Indus. Inc.*, 24 Mass. App. Ct. 188, 193 (1987) (clause barring reliance on warranties and representations "not set forth in this agreement or previously made in writing" applied where no warranty or representation "was set forth *or made*" [emphasis supplied]). Doing so supports DeWolfe's interpretation of the clause.

Further, DeWolfe's construction of the clause is to be favored, because the construction offered by the defendants fails to give effect to the words "or previously made in writing." If, as the defendants suggest, the warranties and representations clause were intended to preclude reliance on all prior representations other than those expressly contained in the written agreement, its purpose would have been better served had it stated simply, "The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement." Instead, the clause adds the words "or previously made in writing." The defendants account for these words by suggesting that they merely provide an example of an

excluded warranty or representation. This is not persuasive. "It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect." *Hagerty* v. *Myers*, *supra*, quoting *Rocci* v. *Massachusetts Acc. Co.*, *supra*. DeWolfe's construction of the exculpatory clause plainly gives effect to the phrase "or previously made in writing." Under the defendants' construction, by contrast, the meaning of the clause is the same whether or not the phrase is included, and that construction therefore gives the phrase no effect. DeWolfe's construction is to be preferred.

We thus read the warranties and representations clause as permitting reliance on prior written representations not set forth or incorporated in the agreement.[14] It follows that the warranties and representation clause of the agreement does not relieve the defendants of liability for Richards's written misrepresentations. The defendants have accordingly failed to establish that they are entitled on this basis to judgment as a matter of law. See *Dias* v. *Brigham Med. Assocs., Inc.*, 438 Mass. 317, 319 (2002).

4. *Conclusion.* The judgment in favor of Richards and Hingham Centre is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]We recognize, however, that the clause is not a model of clarity, and that some authorities have reached a conclusion contrary to our own. See, e.g., A.L. Eno, Jr., & W.V. Hovey, Real Estate Law § 3.29 & n.1 (4th ed. Supp. 2011-2012), citing *id.* at § 53.53, clause 25. Nonetheless, even if we were to conclude that the clause is ambiguous, on the record before us we would reach the same result. The purchase and sale agreement states, on its face, that it is a "Standard Form Purchase and Sale Agreement" and that it is "From the Office of: Hingham Centre Ltd." Because Hingham Centre represented the Tribunas in the sale of the property, any ambiguity in the agreement is to be construed against the Tribunas and in favor of DeWolfe. See Restatement (Second) of Contracts § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds"); 17A C.J.S. Contracts § 425 (2011) ("A contract's language will be construed most strictly or strongly against the party responsible for its use, regardless of whether that party or his or her representative chose the language or prepared the contract").