NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12448


DEBRA ARMATA  vs.  TARGET CORPORATION & another.[1]



Hampden.     March 6, 2018. - June 25, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Consumer Protection Act, Collection of debt, Unfair or deceptive
     act.  Debt.  Telephone.  Regulation.



     Civil action commenced in the Superior Court Department on
July 20, 2015.

     The case was heard by John S. Ferrara, J., on motions for
summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Sergei Lemberg for the plaintiff.
     Brian Melendez, of Minnesota (Alan E. Brown also present)
for the defendants.
     Maura Healey, Attorney General, & Benjamin K. Golden & Max
Weinstein, Assistant Attorneys General, for the Attorney
General, amicus curiae, submitted a brief.

---

     [1] Target Enterprises, Inc., doing business as Target
Corporate Services, Inc.

LENK, J.  In this case, we construe the revised Massachusetts debt collection regulations, which limit how often a creditor may attempt to contact a debtor via telephone in order to collect a debt.  Title 940 Code Mass. Regs. § 7.04(1)(f) (2012) (regulation), implementing G. L. c. 93A, § 2, prohibits creditors from "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period."  Creditors are exempt under the regulation when they are "truly unable to reach the debtor or to leave a message for the debtor."  Office of the Attorney General, Guidance with Respect to Debt Collection Regulations (2013) (http://www.mass.gov/ago/docs/government/debt-collection-guidance-2013.pdf [https://perma.cc/V4Q8-Y39E]) (Attorney General's guidance).  We must decide whether the regulation applies to creditors, such as the defendants, who use automatic dialing devices or voluntarily decide not to leave voicemail messages.  We conclude that it does.

Debra Armata commenced an action in the Superior Court against Target Corporation and Target Enterprises, Inc., doing business as Target Corporate Services, Inc. (collectively, Target), alleging that Target violated the regulation by telephoning her more than two times in a seven-day period in

order to collect a debt.  A Superior Court judge granted Target's motion for summary judgment and denied Armata's cross-motion for summary judgment regarding liability under the regulation, and Armata appealed.  Target does not deny that it telephoned Armata more than twice in a seven-day period in order to collect a debt.  Rather, Target maintains that it did not "initiate" any communications within the meaning of the regulation because it telephoned Armata with an automatic dialing device, which only plays the prerecorded message after the call is answered and no live Target representative is available.  Target also contends that the majority of telephone calls, which Armata did not answer, did not constitute "communications" within the meaning of the regulation because they did not convey any information, given that Target did not leave voicemail messages.  In the alternative, Target claims that it was exempt from the regulation because, although it was able to reach Armata, it could not, as a practical matter, leave her voicemail messages without violating State and Federal law.

Target's proffered interpretation of the regulation is inconsistent with its plain meaning and the Attorney General's guidance, and is contrary to the regulation's purpose of preventing creditors from harassing, oppressing, or abusing debtors.  The regulation applies to any attempted telephonic communication by a creditor to a debtor in an effort to collect

a debt, so long as, as here, the creditor is able to reach the debtor or to leave a voicemail message for the debtor.  Further, Target was not exempt from the regulation, because it was not actually precluded from leaving Armata voicemail messages under State or Federal law.  Accordingly, Armata is entitled to summary judgment on the issue of liability.

1.  Background.  The material facts are not in dispute.  In May, 2013, Armata applied for a Target-branded debit card.  She then incurred a debt to Target; the debt at issue was more than thirty days past due, and was incurred for personal purposes.  Target telephoned Armata numerous times beginning on January 23, 2015, in order to collect the debt.[2]  There were times when Target telephoned Armata concerning the debt more than twice in a seven-day period.[3]

---

[2] Target also telephoned Armata in 2014.  Target asserts, and Armata disputes, that the telephone calls in 2014 were from Target's pharmacy, and thus did not concern the debt.  This dispute is not material to the issue of liability, however, because the parties agree that Target called Armata numerous times in 2015 to in order to collect a debt.

[3] There is some discrepancy as to the precise number of telephone calls that Armata received.  For example, Armata claims that Target telephoned her six times between February 12 and February 18, 2015; six times between February 16 and February 20, 2015; and six times between April 13 and April 18, 2015.  Target maintains that it telephoned her only five times between February 16 and February 20, 2015, and four times between April 13 and April 18, 2015.  This dispute is immaterial for purposes of determining liability, as the parties agree that

No person physically placed the telephone calls to Armata; rather, Target telephoned her using a "predictive dialer," which is an automatic dialing device. When Target cardholders answer the telephone calls placed by Target's predictive dialer, a live representative is on the line ninety-five per cent of the time. For the other five per cent of telephone calls, a recorded message is played; the recorded message does not start until the predictive dialer detects that someone has answered the telephone call and only if a live representative is unavailable.

When Armata did answer the telephone calls from Target, she heard a prerecorded message requesting that she contact Target. The record is silent as to whether she heard such a message more than twice in any given week. Armata was never connected with a live person. Although Target was able to leave Armata voicemail messages, it chose not to, based on an internal policy not to leave voicemail messages.

Armata commenced an action in the Superior Court, alleging that Target violated the regulation by placing more than two debt collection calls to her cellular telephone within a seven-day period. See 940 Code Mass. Regs. § 7.04(1)(f). Target

---

there were times when Target telephoned Armata concerning the debt more than twice in a seven-day period.

Target's policy with respect to the number of telephone calls placed is to refrain from telephoning consumers more than four times per day.

moved for summary judgment, and Armata cross-moved for summary judgment as to liability. Reasoning that Target's unsuccessful attempts to speak to Armata via telephone did not constitute "communications" as defined by the regulations, and that there was no indication that Armata heard a prerecorded message from Target more than twice in a given week, a Superior Court judge denied Armata's motion and allowed Target's motion. Armata appealed, and we transferred the case from the Appeals Court to this court on our own motion.

2. <u>Discussion</u>. a. <u>Standard of review</u>. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." <u>Augat, Inc</u>. v. <u>Liberty Mut. Ins. Co</u>., 410 Mass. 117, 120 (1991). "In a case like this one where both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [has entered]" (citation omitted). <u>Boazova</u> v. <u>Safety Ins. Co</u>., 462 Mass. 346, 350 (2012). "Because our review is de novo, we accord no deference to the decision of the motion judge." <u>DeWolfe</u> v. <u>Hingham Ctr., Ltd</u>., 464 Mass. 795, 799 (2013).

b. <u>Statutory and regulatory framework</u>. General Laws c. 93A, § 2 (<u>a</u>), prohibits "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce." The Attorney General may implement rules and regulations interpreting this provision. G. L. c. 93A, § 2 (c). In 2012, the Attorney General amended the regulation, 940 Code Mass. Regs. 7.04(1)(f), which now provides:

"It shall constitute an unfair or deceptive act or practice for a creditor to contact a debtor . . . [by] [i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number . . ." [emphasis added].

In 2013, in response to public inquiries, the Attorney General issued "Guidance With Respect to Debt Collection Regulations." This guidance explained:

"The goal of this provision is to not only limit the number of times a creditor can communicate with a debtor via telephone to try to collect a debt, but to also limit the fees that a creditor can impose on a debtor (thereby limiting voicemails and text messages to twice in a seven day period). Accordingly, unsuccessful attempts by a creditor to reach a debtor via telephone may not constitute initiation of communication if the creditor is truly unable to reach the debtor or to leave a message for the debtor. Notwithstanding this interpretation, the Office of the Attorney General may still consider enforcement action against any conduct, including initiation of communication via telephone, the natural consequence of which is to harass, oppress, or abuse a debtor" (emphasis added).

See Attorney General's guidance, <u>supra</u> at 1.[4]

c. <u>Analysis</u>. The parties agree that, for purposes of the regulation, Target was a creditor and Armata was a debtor. See 940 Code Mass. Regs. § 7.03 (2012). It also is undisputed that, at times in 2015, Target telephoned Armata more than twice in a seven-day period in an effort to collect a debt. The only dispute is whether, in telephoning Armata, Target was "[i]nitiating a communication . . . via telephone, either in person or via text messaging or recorded audio message" within the meaning of the regulation.[5] See 940 Code Mass. Regs. § 7.04(1)(f).

"We interpret a regulation in the same manner as a statute, and according to traditional rules of construction." <u>Warcewicz</u> v. <u>Department of Envtl. Protection</u>, 410 Mass. 548, 550 (1991).

---

[4] In addition to the guidance, discussed <u>infra</u>, the Attorney General submitted a post-argument amicus letter in this case expressing her view that, pursuant to the regulation, "a creditor violates [G. L. c.] 93A if it initiates more than two telephone calls to a debtor's home, cell[ular], or personal telephone number in a seven-day period, even if the creditor uses a predictive dialer or voluntarily chooses not to leave a message." This explanation was not published or otherwise publicly available prior to oral argument in this case, and we do not consider it. To the extent the Attorney General seeks to clarify the meaning of the regulation, she is free to publish additional guidance or amend the regulation as needed.

[5] Target does not challenge the regulation as being inconsistent with General Laws c. 93A, § 2. The only issue is whether the regulation, as written, encompasses Target's telephone calls to Armata.

"Thus, we accord the words of a regulation their usual and ordinary meaning."  Id.

The regulation does not define "initiating."  Webster's dictionary defines the term "initiate" as "to begin or set going," to "make a beginning of," or to "perform or facilitate the first actions, steps, or stages of."  Webster's Third New International Dictionary 1164 (1993).  See Commonwealth v. Samuel S., 476 Mass. 497, 501 (2017) ("we look to dictionary definitions as a guide to a term's plain or ordinary meaning").  The current language of the regulation was the result of the Attorney General's revisions in 2012.  The prior version prohibited creditors from "[e]ngaging any debtor in communication via telephone, initiated by the creditor, in excess of two calls in each seven-day period at a debtor's residence and two calls in each 30-day period . . ." [emphasis added].  See 940 Code Mass. Regs. § 7.04(1)(f) (1993).  By contrast, the current version makes no mention whether the creditor and the debtor need actually "engage" in a communication.  See 940 Code Mass. Regs. § 7.04(1)(f).  The use of the word "initiating" thus indicates that a creditor need not be successful in reaching a debtor for the regulation to apply. As discussed, infra, this is reinforced by the Attorney General's guidance.

The regulation defines "communication" as "conveying information directly or indirectly to any person through any medium."[6]  See 940 Code Mass. Regs. § 7.03.  The regulation also specifies that this communication may be "in person," via "text messaging,"[7] or via "recorded audio message."  940 Code Mass. Regs. § 7.04(1)(f).  A creditor therefore "initiat[es] a communication . . . via telephone" under the regulation every time it attempts to contact a debtor's telephone to convey information, unless the creditor is exempted, as discussed infra.  The regulation applies regardless of whether the telephonic communication is live, via text message, or via recorded audio message.

The Attorney General's guidance carves out an exemption under the revised regulation, namely, that "unsuccessful attempts by a creditor to reach a debtor via telephone may not constitute initiation of communication if the creditor is truly unable to reach the debtor or to leave a message for the debtor"

---

[6] The definition of "communication or communicating" in the regulation explicitly excludes "nonidentifying communications," which, in turn, are defined as "any communication with any person other than the debtor in which the creditor does not convey any information except the name of the creditor and in which the creditor makes no inquiry other than to determine a convenient time and place to contact the debtor" (emphasis added).  940 Code Mass. Regs. § 7.03.

[7] It is undisputed that Target never sent Armata text messages concerning the debt.

(emphasis added).  See Attorney General's guidance, supra at 1.

We construe the Attorney General's guidance to mean that attempts by a creditor to reach a debtor via telephone do constitute initiation of communication if the creditor is able to reach the debtor or leave a voicemail message for the debtor.

As it is not "arbitrary, unreasonable or inconsistent with the plain terms of the regulation itself," the Attorney General's interpretation is entitled to "substantial deference." See Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen., 454 Mass. 174, 184 (2009).  The Attorney General's guidance ensures that creditors are not penalized for attempting to reach a debtor when it is actually impossible to do so; for example, when debtors do not answer and their voicemail or answering system is not set up, their mailbox is full, or their telephones have been disconnected.[8]  In such circumstances, penalizing the creditor would not further the purpose of the regulation, which was designed to prevent creditors from engaging in practices that would "harass, oppress, or abuse a debtor."  See Attorney General's guidance, supra at 1.  See also Attorney General,

_____

[8] We need not define all the ways in which a creditor would be "truly unable" to reach a debtor.  Target does not contend that it was truly unable to reach Armata.  Nor would such an argument be credible in this case, since Armata did occasionally answer Target's telephone calls.  Additionally, there is no dispute that Target had Armata's correct telephone number, which Target had obtained Armata's prior consent to telephone.

Press Release, Updated Debt Regulations Provide Stronger Protections (Mar. 1, 2012), (http://www.mass.gov/ago /news-and-updates/press-releases/2012/2012-03-01-debt-collection-regulations.html [https://perma.cc/F656-9NE3]) (regulation was "designed to provide stronger consumer protections by addressing changing technology," and to "ensure that the playing field is level for both creditors and consumers so that all parties are better protected").

Target nonetheless contends that it did not violate the regulation for several reasons. Target argues that it did not "initiate" communications within the meaning of the regulation because it used a predictive dialer to place the calls. Target also contends that most of its telephone calls to Armata were not "communications" because they did not convey information, given that Armata did not answer them and Target did not leave any voicemail messages. In the alternative, Target argues that its telephone calls to Armata were exempt under the Attorney General's guidance, because, as a practical matter, it could not leave her voicemail messages without running the risk of violating State and Federal law. Each of these arguments is unavailing.

First, Target insists that the regulation does not apply to "all calls" but, rather, only to those calls that are "initiat[ed] . . . either in person or via text messaging or

recorded audio message."  This interpretation is based on Target's incorrect premise that the phrase "either in person or via text messaging or recorded audio message" modifies the word "initiating," rather than "communication . . . via telephone."[9] Relying on this interpretation, Target maintains that its telephone calls to Armata are not covered by the regulation because they were not "initiat[ed] . . . via . . . recorded audio message," but with a predictive dialer.  Target's use of a predictive dialer ensured that a live representative was waiting on the line most of the time, and, if a recorded message was used, it did not start playing until the dialer detected a connection and a live representative was unavailable.  Target believes that these features of a predictive dialer immunize it from the regulation, which Target contends is aimed at "true robocalls,[10] where a recorded message always, automatically, and

---

[9] See 940 Code Mass. Regs. § 7.04(1)(f) (2012) (prohibiting creditors from "[i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period").

[10] Target's use of the term "robocalls" is unsupported. Nothing in the language of the regulation or in the Attorney General's guidance mentions "robocalls," let alone suggests a meaningful distinction between "robocalls" and telephone calls from a predictive dialer.  See 940 Code Mass. Regs. § 7.04(1)(f); Attorney General's guidance, supra.

immediately plays as soon as the call is answered, and no human representative is even available."

Target's argument that the use of a predictive dialer shields it from liability contradicts the plain meaning of the regulation as well as its purpose. As explained, supra, the phrase "either in person or via text messaging or recorded audio message" modifies "communication . . . via telephone," which immediately precedes it. See Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 123 (1986) (general rule of grammatical construction is that "a modifying clause is confined to the last antecedent" [citation omitted]). Target counters that if the phrase "either in person or via text messaging or recorded audio message" modifies "communication . . . via telephone," then it is superfluous. In fact, the phrase underscores that the regulation is not limited to traditional telephone calls placed by a live person; it applies regardless of whether the initiated telephonic communication takes place via a live person or a recorded audio message, or whether the initiated communication takes the form of text messages.[11]

---

[11] In support of its position that the regulation was not intended to cover calls placed with a predictive dialer, Target points out that autodialed calls are heavily regulated under the Federal Telephone Consumer Protection Act (TCPA). See 47 U.S.C. § 227. This argument is unconvincing. The TCPA does not regulate the frequency of creditor calls, which is the primary concern of the regulation at issue in this case. See generally

Moreover, the regulation is not concerned with the specific technology a creditor uses to contact a debtor; it seeks to limit how often a creditor attempts to reach a debtor's telephone and causes the debtor to incur fees.[12]  See Attorney General's guidance, supra at 1.  Target's reading would create a loophole so large as to swallow the rule, such that nearly every creditor would be able to evade the limits imposed by the regulation simply by changing its dialing technology.  The potential for harassment stems in large part from the volume of initiated communications; it makes no difference what technology a creditor uses to dial the debtor's telephone or at what point a prerecorded message begins playing.

---

id.  Rather, the TCPA prohibits, inter alia, using automated telephone equipment to telephone certain numbers at any time, and for any reason, without prior express consent.  47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B).  For the same reason, Target's reliance on Ybarra v. Dish Network, L.L.C., 807 F.3d 635 (5th Cir. 2015), is misplaced.  In that case, the United States Court of Appeals for the Fifth Circuit concluded that, to be liable under the "artificial or prerecorded voice" section of the TCPA, "a defendant must make a call and an artificial or prerecorded voice must actually play."  Id. at 640.  The court in Ybarra reasoned that the TCPA regulates "using" an artificial or prerecorded voice, so it is not sufficient that the voice be "on standby as the call was placed."  Id. at 641.  By contrast, the regulation in this case does not contain any type of blanket ban on the "use" of automated telephone equipment.

[12] Such fees presumably would be imposed on debtors by their cellular telephone providers when, for example, debtors receive text messages sent by creditors.

Second, Target contends that most of its telephone calls to Armata, which went unanswered, were not "communications" within the meaning of the regulation. The regulation defines "communication" as "conveying information directly or indirectly to any person through any medium" (emphasis added). See 940 Code Mass. Regs. § 7.03. Target essentially argues that most of its telephone calls did not "convey[] information" because Armata did not answer them and Target did not leave voicemail messages. This argument is unavailing because it reads the word "communication" in isolation. The regulation does not limit "communication[s]," but, rather, the initiation of communications. See 940 Code Mass. Regs. § 7.04(1)(f). The fact that Target did not successfully directly convey information to Armata is unimportant, because Target nevertheless initiated the process of conveying information to Armata via telephone.[13]

Target is again overlooking the purpose of the regulation. A creditor can "harass, oppress, or abuse" a debtor with its telephone practices by calling incessantly, even if it does not leave voicemail messages notwithstanding being able to do so.

---

[13] Even without the use of voicemail messages, a creditor can convey indirectly that it seeks payment from a debtor by calling and hanging up repeatedly, as underscored by the regulation's antiharassment purpose. See Attorney General's guidance, supra at 1.

See Attorney General's guidance, supra at 1.  Under Target's reading, a creditor would be permitted to telephone a debtor unremittingly so long as it chose not to leave voicemail messages.  In such a scheme, a "communication" would occur only if the debtor answered the call.  Target's interpretation undermines the purpose of the regulation by essentially requiring debtors to answer calls from creditors twice per week in order to compel the creditors to stop calling that week.

Third, Target seeks refuge in the exemption outlined by the Attorney General's guidance for creditors who are unable to leave debtors voicemail messages.[14]  Target essentially argues that it was caught between a proverbial rock and a hard place: although it was physically possible to leave Armata voicemail messages, as a practical matter, Target could not do so because it risked violating the Attorney General's other debt collection regulations and the Federal Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692-1692p.  This argument is unpersuasive,

---

[14] The Attorney General's guidance provides no exemption for those who voluntarily choose not to leave voicemail messages.  See Attorney General's guidance.  Indeed, in 2016, the Attorney General entered into an "assurance of discontinuance" with a company that "did not consider outgoing calls where its collectors decided not to leave a message" to constitute "communications" under the regulation.  See In re Ditech Financial LLC, Suffolk Superior Court, No. 16-2437E, slip op. at 4 (Aug. 4, 2016).  The company thereafter agreed to discontinue this practice in lieu of the Attorney General commencing suit. Id.

both because the Massachusetts regulations are not as restrictive as Target contends, and because Target does not fall within the purview of the FDCPA.

On the one hand, the Massachusetts debt collection regulations prohibit creditors from "[c]ommunicat[ing] by telephone without disclosure of the name of the business or company of the creditor and without disclosure of the first and last name of the individual making such communication or a first name and a personal identifier for such individual such as a code or alias."  940 Code Mass. Regs. § 7.04(d).  At the same time, 940 Code Mass. Regs. §§ 7.05(2) and 7.06(1)(a) (2012)[15] prohibit a creditor from implying "the fact of a debt" to anyone who is not the debtor.  Target reasons that, because it may not leave a voicemail message without identifying itself, and because it cannot know who will listen to a voicemail message, it cannot leave such a message without violating these other regulations.  See 940 Mass. Code Regs. § 7.05(1) ("A creditor may assume that all contacts directed to the debtor's household are received either by the debtor or persons residing in the

---

[15] Title 940 Code Mass. Regs. § 7.05(2) (2012) prohibits creditors from implying the fact of a debt specifically to persons who reside in the debtor's household, while 940 Code Mass. Regs. § 7.06(1)(a) prohibits creditors from implying the fact of the debt to anyone other than the debtor.

household of the debtor unless the creditor knows or should know information to the contrary").

We do not interpret the regulatory scheme as prohibiting Target from leaving a voicemail message that simply states the caller's name, that the call was on behalf of Target, and that the recipient should return the call, so long as the message does not mention or in any way imply that the call concerns the collection of a debt. See 940 Code Mass. Regs. § 7.05(2) ("It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor" [emphasis added]); id. at § 7.06(1)(a) ("It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten to contact persons [other than the debtor or those residing in the household of a debtor] in connection with a debt in any of the following ways: . . . Implying the fact of the debt to any such person" [emphasis added]). The regulation simply requires that, when attempting to contact a debtor, a creditor affirmatively identify the caller and the company. 940 Code Mass. Regs. §§ 7.04(d). Accordingly, Target was not prevented under the Massachusetts debt collection regulations from leaving Armata voicemail messages, so long as Target refrained from implying that the telephone call concerned a debt.

Nor was Target barred from leaving Armata voicemail messages under the FDCPA, which also contains a provision prohibiting debt collectors from communicating with third parties about a debt. See 15 U.S.C. § 1692c(b). Unlike the Massachusetts regulation, the FDCPA explicitly requires debt collectors to disclose that any "communication is from a debt collector," 15 U.S.C. § 1692e(11), so a debt collector would have to include such information in its voicemail messages. Target was not prevented from leaving Armata voicemail messages under the FDCPA, however, because Target does not fall within the statute's definition of a debt collector. See 15 U.S.C. § 1692a(6).[16] Target was calling Armata to collect a debt on its own behalf, which exempts it from the FDCPA.[17] See id.

----

[16] See 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"; Chiang v. Verizon New England, Inc., 595 F.3d 26, 41 (1st Cir. 2010) ("Creditors collecting on their own accounts are generally excluded from the [FDCPA's] reach" unless they use "any name other than [their] own which would indicate that a third person is collecting or attempting to collect such debts").

[17] As to creditors that are debt collectors bound by the FDCPA, we invite the Attorney General to provide guidance as to how such creditors should conduct their telephonic debt collection practices in light of the stricter FDCPA requirements.

Accordingly, at times when Target was able to reach Armata or leave a voicemail message for her, Target initiated telephone communications within the meaning of the regulation.  Target initiated such telephone communications to collect a debt more than twice in a seven-day period.  Because the meaning of the regulation is a question of law, as to which there are no material facts in dispute, Armata is entitled to summary judgment on the issue of liability.  Armata's request for damages, costs, and injunctive relief requires further proceedings in the Superior Court.

Conclusion.  The order allowing Target's motion for summary judgment and denying Armata's cross motion for summary judgment is vacated and set aside.  The matter is remanded to the Superior Court, where an order shall enter granting summary judgment for Armata, and for further proceedings consistent with this opinion.

So ordered.