NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1144

KATE FERRIE

vs.

DEPARTMENT OF CORRECTION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a hearing in the Superior Court, a judge ordered summary judgment to enter for the defendant, the Department of Correction (DOC), on the plaintiff, Kate Ferrie's, complaint for retaliation in violation of G. L. c. 151B, § 4 (4).[1] Ferrie appeals, claiming there are genuine issues of material fact as to whether the DOC knew that Ferrie was subjected to retaliation. She also claims that the judge erred in failing to consider recent precedent. Concluding that there are genuine issues of material fact, we reverse the judgment.

1. Background. We recite the facts and all reasonable inferences in the light most favorable to Ferrie. See Verdrager

---

[1] The DOC also sought dismissal of Ferrie's sexual harassment claim; however, the judge denied the motion as moot, as the complaint did not contain such a cause of action.

v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 395 (2016).

In August 2014, Ferrie was hired by the DOC as a correction officer. In December 2014, Ferrie reported that she had been sexually harassed by a captain. The DOC initiated an investigation, and it concluded that the captain engaged in misconduct, resulting in his suspension and transfer to another DOC facility. Thereafter, Ferrie claimed that she experienced hostility from her coworkers and supervisors, in retaliation for filing the sexual harassment complaint. She alleged that coworkers wrote derogatory phrases on her academy portrait, and left them in places that she would find them. Ferrie also complained that coworkers would "go quiet" when she entered a room, hung up on her when she called on the telephone, and believed her relationship with the captain was "consensual."

Ferrie claimed that her supervisors were both aware of and engaged in the retaliation. She alleged that while she was five or six months pregnant, a sergeant assigned her to a search team to assist with a combative inmate. When Ferrie arrived at the inmate's cell, a lieutenant and another officer asked why she was there, knowing that she was pregnant and that the inmate was known to punch and kick staff. Ferrie did not assist with the inmate; later when she asked the sergeant why she was sent to help with a combative inmate, she was told to take it up with

the union.  Ferrie reported this to a captain and told him that she "couldn't deal with the retaliation anymore."  The captain told Ferrie that he would talk with the sergeant but "nothing ever came out of it."

In the summer of 2015, Ferrie sought treatment for anxiety and depression that she attributed to feeling "ostracize[d]" and treated unfairly at work.  She alleged that the "retaliatory conduct from her coworkers and supervisors for being labeled a 'snitch' continued and worsened" between the summer of 2015 and November 2016.  As a result, in November 2016, Ferrie took medical leave for work-related stress, and received workers' compensation payments.

While she was on leave, and consistent with its procedures, the DOC conducted surveillance of Ferrie.  The surveillance revealed that Ferrie was in violation of the DOC's tobacco policy that prohibited correction officers from using tobacco both on and off the job.[2]  See G. L. c. 27, § 2.  Ferrie entered into a last-chance settlement agreement in August 2017 for violating the tobacco policy; after another violation, a second

---

[2] Ferrie contends that the DOC changed the tobacco policy to allow employees to use tobacco while not on DOC property. Although there was a change in policy, it did not apply to correction officers.  See G. L. c. 27, § 2.

last-chance settlement agreement was circulated in January 2018, but Ferrie never signed it.[3]

On December 11, 2018, Ferrie's therapist wrote a letter that Ferrie "[wa]s able to return to full duty employment with no restrictions at this time." The letter anticipated a return date "on or around 2/10/19." Thereafter, the DOC terminated Ferrie's workers' compensation benefits. Ferrie's therapist wrote a clarifying letter that stated that Ferrie needed six more weeks to prepare for her return to work, and Ferrie began preparations to return to work. On February 6, 2019, about four days before her scheduled return, the DOC terminated Ferrie's employment for violation of the tobacco policy and pursuant to the terms of the first last-chance settlement agreement.[4]

2. Discussion. "We review a grant of summary judgment de novo." Blake v. Hometown Am. Communities, Inc., 486 Mass. 268, 272 (2020), quoting DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 799 (2013). The moving party, here the DOC, has "the burden of establishing that there is no genuine issue as to any material fact and that [it is] entitled to judgment as a matter

_____

[3] In February 2018, Ferrie filed a complaint against the DOC for retaliation with the Massachusetts Commission Against Discrimination, which she eventually withdrew in favor of filing this action in Superior Court.
[4] There was an additional observation of Ferrie in violation of the tobacco policy, but her termination was not based thereon.

4

of law." DeWolfe, supra. See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

"To make out [a] prima facie case [for retaliation under G. L. c. 151B, § 4, the plaintiff] [must] show that [s]he engaged in protected conduct, that [s]he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 260 (2021), quoting Mole v. University of Mass., 442 Mass. 582, 591-592 (2004). Here, Ferrie alleged that she engaged in protected activity by reporting sexual harassment, and that as a result, she was harassed by her coworkers, investigated by the DOC, and terminated.

On the DOC's motion for summary judgment, the judge ruled, and we agree, that Ferrie's report of sexual harassment was a protected activity and that there was sufficient evidence "to support an inference that the allegedly retaliatory acts were casually connected to [that] report."[5] The remaining question is whether, for purposes of summary judgment, Ferrie provided sufficient evidence that the DOC knew or should have known about the retaliatory acts directed at Ferrie. The judge concluded that the evidence that the DOC was aware of the hostile work

_____

[5] The DOC does not meaningfully contest these conclusions.

5

environment was "scant," and granted summary judgment to the DOC.  On appeal, Ferrie claims that there were disputed issues of fact as to the DOC's knowledge.[6]  As detailed supra, and taken in the light most favorable to Ferrie, the record supports an inference that, at a minimum, Ferrie complained about a sergeant's allegedly-retaliatory behavior to a captain, and was promised that it would be dealt with.  Under agency principles, this knowledge is imputed to the DOC.  See Merrimack College v. KPMG LLP, 480 Mass. 614, 620 (2018) ("Knowledge that an agent acquires in the scope of his or her employment can also be imputed to [a] principal").

Though we agree with the judge's characterization of this evidence as "scant,"[7] we conclude that it is sufficient to create a genuine dispute of material fact in order to survive a motion for summary judgment.[8]  See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 45 (2005) ("the plaintiff's initial burden of establishing a prima facie case [in an employment discrimination case] is not intended to be onerous.  It is meant to be a small

---

[6] The DOC conceded that if Ferrie's supervisors were either aware of or perpetrating the hostility, this proved its knowledge.
[7] "Scant" is defined as "barely or scarcely sufficient." Webster's Third New International Dictionary 2025 (2002).
[8] We do not opine on the merits of the case, and nothing herein should be considered as such.

showing that is easily made" [citations and quotations omitted]).[9]

Judgment reversed.

By the Court (Milkey, Blake & Sacks, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  October 19, 2023.

---

[9] Ferrie contends that the judge erred in failing to apply "relevant new precedent."  In light of our disposition, we need not address this claim, but note that the case she referenced predates the judge's decision here.

[10] The panelists are listed in order of seniority.